In re Kathleen W. ENGLISH and Leslie Foy English, d/b/a English Enterprises.

Kathleen W. ENGLISH and Leslie Foy English, d/b/a English Enterprises, Plaintiffs,

v.

Ina C. DAVIS and John T. Davis, Sr., Defendants.

Bankruptcy No. 83–00103G.
Adv. No. 84–0034G.

United States Bankruptcy Court,
N.D. Georgia,
Gainesville Division.

April 30, 1985.

## OPINION AND ORDER

WILLIAM L. NORTON, Jr., Bankruptcy Judge.

The complaint filed by the debtors-plaintiffs in this adversary proceeding seeks damages for alleged breach of contract to sell the debtors' property. The debtors allege that they entered into a real estate sales contract with the defendants for the sale of real property. The sale was never

completed pursuant to that contract. The debtors subsequently sold the property to a third party and then commenced this proceeding to recover their contract damages.

The purchase price under the contract was $92,480. The property was later sold for only $75,000. The debtors thus claim damages of $17,480. They allege that they were at all times ready, willing and able to close the transaction pursuant to the contract. These title 11 cases and the instant adversary proceeding were referred to this bankruptcy court by virtue of the district court's omnibus reference orders entered pursuant to 28 U.S.C. § 157(a).

The defendants have filed the present motion to dismiss the adversary proceeding for lack of subject matter jurisdiction, asserting that the exercise of jurisdiction by a non-Article III bankruptcy judge would run counter to the ruling of the Supreme Court of the United States in *Northern Pipeline Construction Company v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). They argue that the bankruptcy judges of the District, who together comprise the bankruptcy court "unit" of the United States district court under 28 U.S.C. § 151 (enacted by the 1984 Bankruptcy Amendments, P.L. 98–353, effective July 10, 1984), cannot constitutionally "be vested with jurisdiction to decide a state law contract claim of the debtor-in-possession against a third party".

The defendants specifically argue the invalidity of the Interim Rule promulgated by the Judicial Conference of the United States, and adopted by the district court of this district in December 1982 to allow bankruptcy judges to continue to adjudicate bankruptcy disputes under a delegation of jurisdiction by the district court. However, the question of the validity of the Interim Rule is now moot. While this Bankruptcy Court ruled that the Interim Rule did not validly (1) confer jurisdiction on the district court based on former 28 U.S.C. § 1471 (enacted in 1978 by P.L. 95–598) or under any other statute or Bankruptcy Rule, or (2) delegate bankruptcy jurisdiction to the bankruptcy judges of the separate and independent bankruptcy court created by the 1978 jurisdictional enactment of Congress, *In re Seven Springs Apartments*, 33 B.R. 458, 10 B.C.D. 634 (Bankr.N.D.Ga.1983), this court's ruling was subsequently reversed by the district court, *In re Seven Springs Apartments*, 34 B.R. 987, 11 B.C.D. 170 (D.C.N.D.Ga. 1983). Other appellate decisions also generally sustained the validity of the Interim Rule, *In re Kaiser*, 722 F.2d 1574 (2d Cir. 1983) and authorities cited therein.

Subsequent to the decisions in *Seven Springs Apartments*, Congress enacted on June 29, 1984, and the President signed on July 10, 1984, P.L. 98–353 embodying new jurisdictional provisions for bankruptcy cases and related civil proceedings. The 1984 Act also created a new court structure for the resolution of such controversies. See P.L. 98–353, title I, enacting 28 U.S.C. § 1334 and 28 U.S.C. § 151 through § 158.[1]

---

1.  28 U.S.C. § 151, i.e. "Designation of Bankruptcy Courts", provides that the Bankruptcy Judges of the district are deemed to be a: "unit" of the District Court "to be known as" the Bankruptcy Court for that district." There is no other elaboration or reference to "unit" or to the relationship or connection between the Bankruptcy Court and the District Court in the July 10 Act of 1984. Thus, while the status of Bankruptcy Judge is substantially altered from pre-July 10, 1984 to become jurisdictional adjuncts and judicial aides of the District Courts, the substance, structure and organization of the pre-July 10, 1984 United States Bankruptcy Court is continued in existence as well as the continuation of the appointments of incumbent Bankruptcy Judges of that date to at least October, 1986. The Bankruptcy Court, comprising the pre-appointed incumbent Bankruptcy Judges, is labeled a "unit" of the District Court for the single purpose to allow the flow of some of the bankruptcy jurisdiction from the District Court to the Bankruptcy Judges. Section 156 specifically, and § 151–155 generally, give to the Bankruptcy Judges the power to continue the organization and management of the Bankruptcy Court "unit" and the appointment and supervision of its Clerk of Court and Clerk's staff. Except for the power to confer delegated bankruptcy jurisdiction and the power to review certain orders of Bankruptcy Judges and to consider certain appeals of Bankruptcy Judges, all pursuant to § 157, the District Judges have no supervisory, managerial or administrative authority over Bankruptcy Judges or the Bankruptcy Court "unit".

New 28 U.S.C. § 1334(a) confers original and exclusive jurisdiction on the district courts over all "cases" under title 11. Section 1334(b) goes on to confer original, but non-exclusive, jurisdiction on the district courts over civil "proceedings" having a requisite statutory "nexus" either (1) to a title 11 bankruptcy case (as analysed below), or (2) predicated on a claim arising under a provision of title 11 (such as a claim under 11 U.S.C. § 547 to avoid a preference or a title 11 claim to set aside another type of improper transfer of property).

New § 1334(c) deals with abstention, a doctrine that, as discussed below, may have applicability to this proceeding because it asserts a purely state law contract cause of action. The district court is authorized, but is not required, by § 1334(c)(1) to abstain from exercising its broad bankruptcy jurisdiction in the "interest of justice" or, under a concept added to the bankruptcy laws in 1984, out of "respect for state law". Under § 1334(c)(2), moreover, the district court is required to abstain from determining a proceeding that is based upon a state law cause of action if (1) its "nexus" to the bankruptcy case is such that the proceeding is merely "related to" the bankruptcy (but does not "arise under" a provision of title 11, or "arise in" the title 11 bankruptcy case), (2) federal jurisdiction would not

have been available in the absence of § 1334 bankruptcy jurisdiction, and (3) the proceeding can be "timely adjudicated in the State forum". However, under § 122(b) of P.L. 98–353, § 1334(c)(2) does not apply in bankruptcy cases filed prior to July 10, 1984, and since this case was filed prior to that date, abstention would not be required in favor of a State forum. However, the courts nevertheless have exercised their permissive abstention power under § 1334(c)(1) in those matters as to which § 1334(c)(2) would wave mandated abstention but for the delayed effectiveness of that provision under § 122(b). See, e.g., In re Dakota Grain Systems, Inc., 41 B.R. 749 (Bankr.N.D.1984). The courts have also held that § 1334(c) abstention power may be exercised only by the district court, In re Atlas Automation, Inc., 42 B.R. 246, 249 (Bankr.E.D.Mich.1984). As noted subsequently, it may be appropriate for the power of abstention to be exercised with respect to the present action by these debtors to recover contract damages.

Following § 1334(b)'s grant of original jurisdiction to the district courts of all bankruptcy cases and proceedings, new 28 U.S.C. § 157(a) goes on to authorize the district courts to "refer" to the bankruptcy judges for the district all bankruptcy "cases" as well as all "proceedings" over

There is no legislative history of these jurisdictional grants of § 1334 and § 157 in the form of Committee Reports. But the Congressional Record statements on June 28, 29, 1984 and March, 1984 which rejected the proposal to institute an Article III Bankruptcy Court, assume that the July 10 Act did not disturb the existing organization and structure of the pre-July 10, 1984 United States Bankruptcy Court, or the independence and status of United States Bankruptcy Judges (now appointed by the Circuit Courts). The only power of the District Court over the Bankruptcy Judges/Bankruptcy Court "unit" is the authority to delegate some of its 28 U.S.C. § 1334 subject matter jurisdiction to Bankruptcy Judges as provided in § 157. The Congressional Record on the dates above mentioned is replete with statements of members of Congress that the Bankruptcy Judges would be "aides" in assisting the District Judges to adjudicate the bankruptcy jurisdictional grant. The Congressional Record statements reveal that the intention of Congress was to create a nexus of

jurisdiction between District Judges and Bankruptcy Judges with respect to the division of the jurisdictional grant only, but not to impose a nexus of organization or structure to the Bankruptcy Court "unit". From a review of the statements of members of Congress it is manifest that the concern was to attempt to solve the Article III problems incident to the exercise of bankruptcy jurisdiction pronounced by the Supreme Court in the Northern Pipeline decision, but to avoid conferring Article III status upon Bankruptcy Judges. The ultimate decision was to confer on the District Court a clear constitutional authority to exercise and supervise the exercise of bankruptcy jurisdiction through the structure of personnel of the non-Article III Bankruptcy Court. The Act of 1984 accomplished this without altering the separation and independence of the Bankruptcy Court, while at the same time conscripting Bankruptcy Judges to perform the judicial work relevant to the District Court grant of bankruptcy jurisdiction.

which the district court would have § 1334 subject matter jurisdiction.

Under § 1334(b) there are three independent connections, or "Nexuses", to bankruptcy, any one of which may serve as a predicate for a district court's exercise of subject matter jurisdiction over a "proceeding". If any one such bankruptcy "Nexus" is present, the district court is empowered, without more, to adjudicate the controversy. If no such "Nexus" is present, then the district court cannot act unless a jurisdictional predicate independent of bankruptcy exists, such as diversity of citizenship under 28 U.S.C. § 1332 or anti-trust jurisdiction under 28 U.S.C. § 1337.

■ Section 1334(b) provides that any one of the following three classes of proceedings has a sufficient "Nexus" to bankruptcy to support the exercise of subject matter jurisdiction over the "proceeding" by a district court: (1) a proceeding that "arises under" a provision of title 11 (Nexus No. 1); (2) a proceeding that "arises in" the title 11 bankruptcy case (Nexus No. 2); or (3) a proceeding that is "related to" the title 11 bankruptcy case (Nexus No. 3). See analysis of "Nexuses" in Norton and Lieb, Jurisdiction and Procedure Under the 1984 Bankruptcy Amendments, *Norton Bankr L & Prac Monograph 1985*—No. 1, pp. 59 et seq. (hereinafter *"Norton and Lieb"*).

A subsequent portion of this opinion refers to the character of a "proceeding" as "core", as delineated by new § 157(b)(2). It is noted at this point, however, that "core" jurisdiction status of a proceeding is not required for the exercise of bankruptcy jurisdiction by a district court under § 1334(b), but that, absent consent of the parties under § 157(c)(2), "core" jurisdiction status is an essential element, among others, for a bankruptcy judge completely to "determine" a proceeding referred by the district court under § 157(a).

By blanket orders of reference entered under § 157(a), the district courts have generally delegated all of their jurisdiction to the bankruptcy judges, but complete jurisdiction of all of the district courts' power is not thereby transferred to the bankruptcy judges. A significant and elusive line of demarcation is drawn by § 157(b) and § 157(c) between those matters referred by a district court that a bankruptcy judge may "determine" [as specified by § 157(b)(1)] and those that the bankruptcy judge may only "hear" pursuant to § 157(c)(1).

■ In general, under the 1984 bankruptcy jurisdictional structure, a bankruptcy judge may determine a proceeding only if it *both* (1) has one of the two § 157(b)(1) "Nexuses", i.e., either Nexus No. 1 or Nexus No. 2, [but not Nexus No. 3 ("related to" the case)], as mentioned above, *and* (2) is a "core" proceeding within the meaning of § 157(b)(2). The dual requirement of "core" status and a § 157(b)(1) "Nexus" (i.e., No. 1 or No. 2) to support a bankruptcy judge's power to "determine" the proceeding and the exclusion of a "related to" (Nexus No. 3) proceeding from that power is analysed in *Norton and Lieb, supra* at p. 62. It is noted that, while "core" proceedings are generally thought to be those that are central to the bankruptcy function as traditionally performed, the scope of the § 157(b)(2) definition of "core" jurisdiction is much broader. For example, § 157(b)(2)(C) includes *any and all* counterclaims that may be asserted by the estate against a third party who files a proof of claim. However, the "core" jurisdiction status of a counterclaim clearly is not, by itself, sufficient to confer complete adjudicatory power on a bankruptcy judge under § 157(b)(1), for either Nexus No. 1 or Nexus No. 2 must also exist to satisfy the dual jurisdictional requisites of § 157(b)(1).[2]

---

**2.** The core jurisdiction proceedings, especially those that involve the determination of issues involving state law or common law rights, may be on a most fragile constitutional basis in consideration of the decision of Justice Brennan in *Northern Pipeline.* Justice Brennan concluded

that non-Article III judges could constitutionally hear and adjudicate issues involving federal rights but could not constitutionally adjudicate issues involving private rights. Justice Brennan stated that federal rights created by Congress at the very lease involve a single statute involving

The new bankruptcy court "unit" lacks the power under § 157(b)(1) to "determine" a proceeding having Nexus No. 3 (i.e., a proceeding that is "related to" the title 11 case) unless, as specified by § 157(c)(2), all parties consent to the exercise of complete adjudicatory power by the bankruptcy judge. This limitation on the jurisdiction of the bankruptcy judge was intentionally imposed by Congress in the structuring of the 1984 amendments so as not to run afoul of the *Northern Pipeline* doctrine under which state law (and possibly other causes of action) cannot be adjudicated by bankruptcy judges who lack Article III status. Under that doctrine, the "essential attributes" of the "judicial power of the United States" may be exercised only by Article III judges, with certain exceptions as delineated by the Court in that case, none of which apply here. State law matters generally are connected to the bankruptcy case by Nexus No. 3 ("related to"). As such, they cannot constitutionally be decided by a non-Article III bankruptcy judge. Accordingly, while a bankruptcy judge is empowered by § 157(c)(1) to "hear" a Nexus No. 3 proceeding absent consent of the parties, such power to "determine" a "related to" proceeding was withheld in deference to the mandate of Article III as interpreted by *Northern Pipeline.*

The scope of the bankruptcy judge's jurisdiction under the 1984 amendments is thus measured by (1) the nature of the "Nexus" of the proceeding to bankruptcy, (2) whether the cause of action finds its source in State law or federal law, and (3) whether or not the proceeding is central to the bankruptcy process and thus at the "core" of traditional bankruptcy functions designed to provide equality of distribution to all claimants and a "fresh start" to individual and business debtors.

Congress has also conferred substantial power on a bankruptcy judge to determine, under § 157(b)(3), whether a particular proceeding may be fully "determined" or merely "heard" by the bankruptcy judge. However, supervening authorization to make that classification determination, or even to determine the entire proceeding, has been vested by § 157(d) in the district court. The district court's overriding control stems from the fact that § 157(d) authorizes the district court to "withdraw" any proceeding for "cause", in whole or in part, and thereby to take it away in whole or in part from the bankruptcy judge. In addition to that power, the district court has broad authority over a "Nexus No. 3" ("related to") proceeding under § 157(c)(1). Thus, after the bankruptcy judge has "heard" it and submitted drafts of findings of fact and conclusions of law to the district court as required by § 157(c)(1), the district court then, under explicit directives of § 157(c)(1), enters the "final" order after considering the drafts and conducting *de novo* review of all matters as to which specific and timely objections have been made. In addition to its controlling, supervisory jurisdiction enabling it to determine any withdrawn proceeding, the district court is also authorized by § 1334(c)(1) to abstain from exercising its jurisdiction either in the interest of justice or in respect for state law. New § 1334(c)(2), further, mandates district (and hence bankruptcy) court abstention over a Nexus No. 3, "related to", proceeding based on a State law

---

a single area of federal law in which the United States was always one of the parties. The federal bankruptcy statute may involve one area of the national law enacted pursuant to the Constitution. But it cannot be argued that one of the parties in bankruptcy (Title 11) litigation is the United States.

Hence, if these observations of Justice Brennan are correct, the use of the Bankruptcy Judges as adjuncts or aides to hear issues involving "related to" proceedings (Nexus No. 3) with the District Judge giving full and *real consideration* to all of the issues and perhaps hear-

ing the proceeding de novo seems on firmer constitutional grounds than may be the final orders issued by Bankruptcy Judges in the core proceedings described in § 157(b). The constitutional infirmity to hearings and proposed findings of fact and conclusions of law by Bankruptcy Judges under § 157(c)(1) lies in the degree to which the "consideration" of the District Judge is real. Norton Bankruptcy Law & Practice, Monograph No. 1, 1985, Jurisdiction and Procedure Under the 1984 Bankruptcy Amendments, Norton & Lieb.

cause of action if (1) an action thereon could not have been brought in a federal court absent jurisdiction conferred under § 1334, (2) the action "is commenced", and (3) the action may be "timely adjudicated" in a state forum. See *Norton and Lieb, supra* at p. 175.

The 1984 jurisdictional system thus differs markedly from the one created in 1978. The earlier system, implementing broad recommendations for reform of the "referee" system promulgated under the Chandler Amendments of 1938 to the 1898 Bankruptcy Act, involved district court domination. The 1978 Act, however, established a separate bankruptcy court, independent of the district court, whose jurisdiction was neither derived from the district courts nor subject to limitation or termination by the district courts through a power to "withdraw" a reference. The 1978 bankruptcy court was empowered by former 28 U.S.C. § 1471 to adjudicate all bankruptcy-related litigation, subject only to conventional appellate review in the district court or before a bankruptcy appellate panel created in a particular circuit. The 1978 system was ended by *Northern Pipeline* because the 14 year terms of its judges failed to comply with Article III's requirement of life tenure for judges who exercise the "judicial power of the United States".

The 1984 system, which materially limits the jurisdiction of bankruptcy judges and empowers the district courts to exercise control over bankruptcy litigation if they wish to do so, represents a sharp departure from the 1978 reform act, and resurrects the pre-1978 difficulties experienced by bankruptcy litigants resulting from protracted and costly jurisdictional litigation and the uncertainties of extended jurisdictional and procedural litigation. Under the 1984 system, there is not only factual and legal uncertainty as to whether particular proceedings are to be finally adjudicated by a district court or before a bankruptcy judge, but also further complexities are posed on a case-by-case basis as to whether the court must or should abstain because of the state law character of a particular cause of action. A particular proceeding may at times resemble a bouncing ball while jumping from State to district to bankruptcy court, and back to a district or state or appellate court. Bankruptcy litigants deserve something better than that.

The present case is a simple action for damages for breach of contract. At best, it's "related to" the bankruptcy case. If it lacks that "Nexus", then there is no jurisdiction over it at all within the federal bankruptcy system—either in the district court or this court. If the proceeding is "related to" the present bankruptcy case, then, as a state law cause of action, it may be the subject of abstention in favor of a State forum. However, as analyzed below, under § 1334 this issue and the issues posed by the present motion are initially for the district court to decide, for the power to determine those matters is vested primarily if not solely in the district court by the terms of § 1334(c) and § 157(d).

There is no significant legislative history with respect to the new jurisdictional provisions, § 1334 and § 157. The notions advanced by the House Judiciary Committee in 1982 (as advanced by that Committee prior to 1978) for the creation of an Article III bankruptcy court following *Northern Pipeline*, as set forth in H.Rep. 97–807 (September 15, 1982), were not accepted by the Congress. Instead, bankruptcy jurisdiction was vested in the district courts by the 1984 amendments. The 1984 provisions for permissive reference of all cases and proceedings by the district court to the bankruptcy judges, the withdrawal of them by the district court, and for abstention, were explored in S.Rep. 98–55, to accompany S. 1013 (April 5, 1983), a bill known as the Thurmond-Heflin bill, key provisions of which were enacted by the 1984 amendments. Congressional rejection of an Article III bankruptcy court was also amplified in a number of statements by Senators and Congressmen recorded in the Congressional Record on March 20, 1984, March 21, 1984, June 28, 1984 and June 29, 1984, 130 Cong.Rec.E. 1107, H. 1847–1850, S. 5341, and H. 7496.

Although the 1984 Act has been characterized as a "judicial maze", *In re S.E. Hornsby and Sons Sand & Gravel Co., Inc.*, 45 B.R. 988, 990 (Bankr.M.D.La.1985), what does emerge from the 1984 legislation is the clear notion that, at least in the performance of some of their duties, bankruptcy judges are intended to be mere bankruptcy jurisdictional judicial "aides" to the district judges. That may be particularly true with respect to § 157(c)(1) "related to" proceedings, which bankruptcy judges may only "hear" and which the district court must determine, absent consent of the parties. Contrariwise, the jurisdiction of bankruptcy judges over § 157(b)(1) proceedings, which they have authority to "determine", is substantially greater than over Nexus No. 3 proceedings under § 157(c)(1), although both § 157(b)(1) and § 157(c)(1) proceedings are subject to the overriding and supervening power of "withdrawal" of the district court under § 157(d). The power to "withdraw" is particularly patent since the district court may exercise it *sua sponte,* unlike "abstention" which may be activated only by a motion of a party.

Therefore, at least in theory, while a bankruptcy judge may "determine" a Nexus No. 1 or Nexus No. 2 proceeding that has "core" jurisdiction status, subject to conventional appellate review under the "clearly erroneous" standard of review applicable under Bankruptcy Rule 8013, the district court may nevertheless "withdraw" the proceeding and, instead of reviewing it under the "clearly erroneous" standard, determine it *de novo* following its withdrawal under § 157(d). These and numerous other issues as to the inter-relationship of the district and bankruptcy judges' jurisdiction remain for future decision of the courts.

In structuring the 1984 system, with its multiplicity of courts and proceedings and its enormous potential for delay and confusion, Congress acceded to the demands of the Judicial Conference and its supporters. The Judicial Conference, urging a long-standing policy, insisted in 1984, as it did in 1978, that the district court remain as the only trial court of general jurisdiction in the federal system. Congress therefore fashioned bankruptcy jurisdiction in 1984 with a view towards limiting the authority of bankruptcy judges, drawing on the Article III attributes of the district judges as a means to attain constitutional compliance. It remains to be seen whether the Supreme Court will hold that Congress achieved that objective. In the meantime bankruptcy litigants are the ones who will have to pay the price that will result from a system of divided responsibility, multiple courts delays, and escalated expense caused by duplicative litigation required to resolve serious disputes under vast clouds of legal uncertainty.

A proceeding that is "related to" a bankruptcy case may be litigated in numerous courts under the 1984 structure until a final decision is ultimately rendered. Contract litigation may start in a state forum prior to bankruptcy and be removed to the district court under 28 U.S.C. § 1452(a) following the commencement of a bankruptcy case. It will then likely be referred under § 157(a) by the district court to the bankruptcy judges under an automatic reference order. The bankruptcy judge may hear it and file proposed findings and conclusions with the district court under § 157(c)(1), and the proceeding then will return to the district court for the entry of a "final" order after appropriate review in that court. Alternately, before the bankruptcy judge reports, the district court may withdraw the proceeding in whole or in part under § 157(d), even upon its own motion. Upon doing so, the district court may rule, after the filing of a motion, that abstention is either appropriate or required, thereby returning the case to the state forum where it was filed in the first place. Some or all of these decisions may find their way up to a court of appeals, either with leave to appeal or by virtue of an appeal taken as of right from a final order. The overlay of complex substantive bankruptcy laws, as well as of detailed and complex Bankruptcy Rules and applicable federal and state non-bankruptcy law, results in a patchwork of multiple federal

and state substantive and procedural law under a structure that poses many unresolved issues that are likely to take years to adjudicate and resolve. But underlying those uncertainties is the notion that bankruptcy courts now function "as an adjunct" of the district court. *Republic Health Corp. v. Lifemark Hospitals of Fla., Inc.,* 755 F.2d 1453, 1455 (11th Cir.1985). The interrelationship of the district and bankruptcy courts remains to be definitively charted. See n. 1, supra.

The 1984 amendments have superseded the Interim Rule, so that the contentions in this case based on that rule are now moot. See *In re South Portland Shipyard and Marine Rys., Inc.,* 740 F.2d 111 (1st Cir. 1984). The jurisdiction of this court and the district court in bankruptcy matters is thus governed solely by the 1984 amendments, and particularly by § 1334 and § 157. In the present case, the first issue is whether this breach of contract action by a title 11 debtor against non-debtor defendants (who have not even filed a proof of claim in the bankruptcy case), which does not involve the property of the estate, is within the § 1334 subject matter jurisdiction granted to the district court. If not within the district court's jurisdiction, it must be beyond that of the bankruptcy judge since that jurisdiction is entirely derivative through § 157(a). The second issue posed is whether the breach of contract issues in this proceeding, as referred by the district court to this court under § 157(a), can legally and constitutionally be both heard and "determined" by a bankruptcy judge pursuant to § 157(b)(1), or "heard" under § 157(c)(1), or perhaps not heard at all by the bankruptcy judge because of the lack of constitutionally conferred jurisdiction or the lack of at least one of the three bankruptcy "Nexuses".

In this district, as apparently in all federal districts in the United States, the district court has referred to the bankruptcy judges of this district all title 11 cases and proceedings "arising in" or "related to" such title 11 cases, or "arising under" a provision of title 11. Recently, the district court in this district (Chief Judge Charles

Moye) held that a proceeding for enforcement of a contract between a debtor and purchaser involving property of the estate, i.e. for specific performance, was not a "core" jurisdiction proceeding as defined by § 157(b)(2). As noted above, a state law contract claim by a debtor is exactly what was before the Court in *Northern Pipeline* and cannot constitutionally be determined by a non-Article III bankruptcy judge. Section 157(c)(1) therefore limits the power of the bankruptcy judge merely to "hearing" such Nexus No. 3 proceeding.

Here, the proceeding seeks damages rather than specific performance. If the district court has any jurisdiction at all over this damage proceeding, it exists only if at least one of the three § 1334(b) "Nexuses" exists, as described earlier. In that regard, this proceeding does not "arise under" a provision of title 11 (Nexus No. 1) for it is not a claim grounded on any provision of the Bankruptcy Code (such as a § 547 claim to recover a preference), nor is it a proceeding that "arises in a title 11 case" (Nexus No. 2). See discussion in *Carlton v. BAWW, Inc.,* 751 F.2d 781, 787, n. 7 (5th Cir.1985). The fact that a debtor in bankruptcy is a party to a proceeding should not be construed to mean that the proceeding "arises in" the title 11 case for § 1334(b) or § 157(b)(1) purposes. If Congress meant to say that, it could simply have said that the district court has bankruptcy jurisdiction over any and every dispute to which a debtor is a party. Congress did not, however, say that.

■ The final question as to the district court's jurisdiction is whether Nexus No. 3 ("related to") jurisdiction exists over the present proceeding. If it does, the district court could alone adjudicate the dispute, but in a referred proceeding, as noted above, the bankruptcy judge can only "hear" such proceeding under § 157(c)(1), absent consent of the parties. The fact that the debtor is a party to a proceeding does not by itself mean that it is "related to" the bankruptcy case, for such a construction of that phrase would mean that

the bankruptcy judge, or the district court, could entertain any proceeding of any character to which a debtor is a party, solely because the debtor is a party, and without regard to whether it has any impact on the estate or the bankruptcy case. However, that is not what Congress said. Moreover, case law requires that the connection of the proceeding to the bankruptcy case be somewhat more than "tenuous" in order to support "related to" jurisdiction. Although a broad interpretation of "related to" jurisdiction was suggested by the court in *Pacor v. Higgins*, 743 F.2d 984, 994 (3rd Cir. 1984), other courts have ruled that the connection must be substantially more than tangential in order to find that the proceeding is "related to" the bankruptcy case. See, *In re Turner*, 724 F.2d 338 (2d Cir. 1983); *In re Bobroff*, 43 B.R. 746, 12 B.C.D. 659, 662 (Bankr.E.D.Pa.1984). Under some authorities, "related to" jurisdiction requires, among other things, a finding that the proceeding has a "definite effect" on the debtor or the estate. See *Kelley v. Salem Mtg. Co.*, 41 B.R. 420, 423 (E.D.Mich.1984).

Under this analysis, there is some doubt whether, in the present case, there is "related to" jurisdiction or any other jurisdiction in the district or bankruptcy court over this contract proceeding under § 1334 or § 157. Thus, here, it may be relevant to ask how much of the alleged $17,500 of damages that will remain after deduction of litigation costs would be available for administration for the benefit of creditors, and whether the net recovery available would have a meaningful impact on the estate. Apart from the possibility of an inadequate financial impact of this particular claim, a further question exists as to whether, assuming that the proceeding is "related to" the bankruptcy case, the court should abstain pursuant to § 1334(c) because of the state law character of the cause of action. One court has ruled that it should abstain from entertaining a debtor's proceeding to collect accounts receivable and that such proceeding should go forward in a state forum, *In re Smith-Douglass, Inc.*, 43 B.R. 616 (Bankr.E.D.N.C.1984), whereas, contrariwise, others have

ruled that a state law contract claim may be asserted by a debtor in a bankruptcy court without abstention being required, *In re Baldwin United Corp.*, 48 B.R. 49, 12 B.C.D. 913, 915–16 (Bankr.S.D.Ohio 1985).

■ This court concludes that the present proceeding is "related to" the bankruptcy case (Nexus No. 3 exists), that the district court has jurisdiction to "determine" it, and that this court has statutory authority to "hear" it pursuant to § 157(c)(1). However, this court lacks § 157(b)(1) authority to "determine" this contract proceeding because such authority would exist only if, as noted earlier, two jurisdictional requisites are satisfied: the proceeding must be "core" *and* either Nexus No. 1 or Nexus No. 2 must exist. The present proceeding for contract damages by the debtors against the defendants fails to satisfy either of the two jurisdictional requisites of § 157(b)(1). Nor have the defendants consented to the exercise of jurisdiction pursuant to § 157(c)(2). Indeed, they vigorously dispute its existence.

The extent of the required consideration or review *de novo* by the district court under § 157(c)(1) in the present Nexus No. 3 proceeding, cannot as yet be ascertained because this proceeding has not been "heard" by the bankruptcy judge and the bankruptcy judge has not yet filed any proposed findings of fact and conclusions of law with the district court pursuant to § 157(c)(1). Thus, any constitutional argument concerning the possible improper exercise by the bankruptcy judge of the powers conferred by § 157(c)(1) in this referred proceeding is premature, just as is the concern that the standard to hear and review such drafts, as later employed in the district court, may not be proper. These arguments cannot be dealt with properly until the nature and extent of the district court's consideration and review has been prescribed by that court and its final order has been entered pursuant to § 157(c)(1).

■ The premature nature of the defendants' constitutional challenge in this court is evident for several reasons. First, if the defendants are accorded a *de novo* hearing in the district court pursuant to

§ 157(c)(1), they may thereby receive the Article III determination to which they are clearly entitled. Second, if this court lacks jurisdiction under § 157 either as a matter of constitutional law or as a matter of statutory construction, then the defendants will not lose the right to contest jurisdiction by awaiting entry of the district court's final order since that objection is not subject to waiver. Third, as the final order is entered by the district court in a "related to" § 157(c)(1) proceeding, it is not appropriate for this court to purport to rule on the validity, scope, nature, or constitutionality of the district court's jurisdiction before that court has even addressed the issue. Fourth, the defendants, in essence, seem to be asking this court to issue an advisory ruling as to the constitutionality of another court's jurisdiction, although it is settled law that a court should limit its determinations to the adjudication of cases and controversies, and should not render advisory opinions. Fifth and finally, if this proceeding had qualified as a § 157(b)(1) proceeding which this court could have fully "determined", then this court would not have hesitated to rule on the constitutionality of a § 157(a) reference of a proceeding to a bankruptcy judge and the grant of complete adjudicatory power to such judge. But as the proceeding is not of that character, and since a "final" order (which, under § 157(c)(1), is beyond this court's power to issue) would result if the defendants' constitutional challenge were to be sustained, this court (as distinguished from the district court) lacks jurisdiction to rule on the issue because it is not empowered to enter a "final" order in a Nexus No. 3 proceeding.

The defendants nevertheless have a procedure available to them to seek an early determination of the constitutional issue by the district court. As noted previously, § 157(d) permits the district court to withdraw any proceeding in whole or in part, on motion or *sua sponte*, for cause shown. The defendants may thus move in the district court for the withdrawal of their present motion so that the district court may determine its own jurisdiction as well as the constitutional issue. That is precisely the procedure that was recently followed by the district court in *In re Benny*, 44 B.R. 581, 12 B.C.D. 495 (N.D.Cal.1984). In that fashion, the district court there withdrew a motion raising a constitutional issue as to certain provisions of the 1984 bankruptcy amendments and decided the issues itself. See also, *In re Tom Carter Enterprises*, 44 B.R. 605, 12 B.C.D. 536 (C.D.Cal. 1984). The defendants' motion is accordingly denied except to the extent that the defendants hereafter move in the district court for its withdrawal and if that court determines to withdraw then this motion shall be decided *ab initio* in that court. It is also noted that the defendants are not precluded by the present decision and order from moving in the district court for permissive abstention under § 1334(c)(1) on the theory that the requisites for mandatory abstention under § 1334(c)(2) have been demonstrated and should be applied as a permissive matter to the present proceeding even though § 1334(c)(2) is not itself technically effective with respect to the present case because it was pending on July 10, 1984.

The practical criticism that the hearing by the bankruptcy judge and the preparation of proposed findings and conclusions and the subsequent consideration and possible *de novo* review by the district court constitute a duplication of judicial resources, is completely factual. Such duplication of effort is recognized and will be experienced repetitively by both levels of trial judges. Of course, such duplication of judicial effort is wasteful of the assets of the estate and the resources of the parties. Just such duplication of effort between the bankruptcy referee and district judge in the adjudicatory process under the 1898 Act was the prime basis for virtually unanimous criticism of that system and led to the enactment of an independent bankruptcy court structure in 1978. Congress found itself unable to confer Article III status on bankruptcy judges in 1984 and, faced with the need to comply with Article III as interpreted by *Northern Pipeline*, enacted a system whose constitutional future is not entirely clear and will turn on an ultimate decision by the Supreme Court.

In the interim, the 1984 provisions, principally those of § 1334 and § 157, have ushered back an era of great confusion and uncertainty, of duplicative judicial effort, and of escalating expense for debtors and creditors alike.

Nevertheless, this court cannot presume, particularly at this early stage in the present litigation, that the dual responsibilities of the bankruptcy judge and the district court will result in unconstitutional action. Nor can this court presume that the limited authority of a bankruptcy judge under § 157(c)(1) to "hear" a dispute, with the "final" order to be entered by the district court, is unconstitutional. Under that provision, the district court, as an Article III court, has the constitutional authority to exercise the "judicial power of the United States" by actually "determining" this adversary proceeding and entering the "final" order. Questions remain as to the constitutional validity of the entry of *interlocutory* orders by the bankruptcy judge, a function which is not explicitly assigned by § 157(c)(1) either to the district court or bankruptcy judge, and which at least one court has held may be exercised by the bankruptcy judge in a § 157(c)(1) proceeding, *In re Lion Capital Group*, 46 B.R. 850, 12 B.C.D. 840 (Bankr.S.D.N.Y.1985). Further questions remain as to the adequacy and constitutionality of proceedings for review before the district court after the proceeding has been "heard" by the bankruptcy judge, as analyzed in *Moody v. Amoco Oil Co.*, 734 F.2d 1200 (7th Cir. 1984). Those questions, however, are not posed for decision at this early stage of the present adversary proceeding.

The motion to dismiss is thus hereby denied as premature, except to the extent that the defendants move in the district court within ten (10) days from the date of entry of this Order for an order by the district court withdrawing the present motion to dismiss pursuant to 28 U.S.C. § 157(d); and, if withdrawal is so granted, then this motion shall be deemed not to have been determined by this court and shall be determined by the district court *ab initio*. Leave is also granted to the defendants to move in the district court for abstention by the district court (and accordingly by this bankruptcy court as well) pursuant to 28 U.S.C. § 1334(c). Subject to the foregoing, the trial of this adversary proceeding will proceed before the bankruptcy judge, unless the district court rules otherwise, but in making such ruling, this court does not rule on whether the debtors or the defendants have a right to trial by jury in the bankruptcy court, another issue that has generated disparate authority. See *Norton and Lieb, supra*, at pp. 187–190; *Mohawk v. Robinson*, 46 B.R. 464, 12 B.C.D. 891 (D.Mass.1985).

IT IS SO ORDERED.