In the Matter of **BROWN TRANSPORT TRUCKLOAD, INC.,** Brown Transport Co., Inc., Brown Transport Corp., BTR Realty, Inc., Service Contractors, Inc., Wilkes Equipment Co., Inc., Thurston Motor Lines, Inc., Debtors.

Robert E. **BRIZENDINE,** Trustee of the Estate of Brown Transport Corp., Brown Transport Truckload, Inc., and related cases, Plaintiff,

v.

**HUMBOLDT EXPRESS, INC.,** Defendant.

Bankruptcy Nos. A89–12515–WHD to A89–12521–WHD.

Adv. No. 90–0268A.

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

Sept. 14, 1990.

J. Michael Lamberth, Lamberth, Bonapfel, Cifelli, Willson & Stokes, Atlanta, Ga., for trustee Robert E. Brizendine.

Roland M. Lowell, Nashville, Tenn., for defendant.

## ORDER

W. HOMER DRAKE, Jr., Bankruptcy Judge.

This matter is before the Court on the Motion of Humboldt Express, Inc. ("Humboldt") for Relief from Stay, and on Trustee Robert Brizendine's (the "Trustee's") Complaint and Motion for Preliminary Injunction. The following constitute the Court's findings of fact and conclusions of law.

## FINDINGS OF FACT

Brown Transport Co. (hereinafter "Debtor") was a trucking company which filed a Chapter 11 petition on October 31, 1989, and the bankruptcy proceeding was converted to Chapter 7 on January 9, 1990. On February 27, 1990, the Court heard a motion from the Trustee concerning the proposed sale of certain interstate and Tennessee operating authorities (the "Authorities") held by Debtor. After the hearing was adjourned, the Trustee conducted an auction of the Authorities, and Central Transport Co. ("Central") offered the highest bid of $355,000. The Court authorized the sale to Central on March 22, but a prerequisite to the consummation of the sale was that the transfer of the authorities is "pursuant to a final and effective order of the Tennessee Public Service Commission [the "TPSC"] or the Interstate Commerce Commission [the "ICC"]," according to the sale contract and this Court's order of April 13, 1990 entered in a related adversary proceeding filed by the Trustee against the TPSC.

Included in the Authorities that were the subject of the sale was Certificate of Convenience and Necessity No. 194–U (the "Certificate"), issued by the TPSC on October 28, 1985. The Certificate provides that "[t]he authority granted herein may not be transferred or sold for a period of five (5) years following the issuance of the certificate." This no-transfer restriction will expire on October 28, 1990.

The Trustee and Central sought authorization of the sale from the ICC by filing a Joint Notice of Exemption under 49 U.S.C. § 11343 on April 26, 1990. Central also sought a grant of temporary authority to lease the Certificate from the Trustee pending the closing of the sale. The ICC granted the temporary authority on April 9. The next day Humboldt filed a petition before the TPSC to "revoke Debtor's operating authority," alleging that the transfer to Central violated the terms of the Certificate. A hearing before the TPSC on the matter was set for June 6, 1990 but was not held because of the pendency of this proceeding.

Both Humboldt and the TPSC filed "Comments" with respect to the Trustee's and Central's exemption on May 9, 1990, pointing out the transfer restriction on the Certificate and asking the ICC to deny the exemption. On June 13, the ICC declined to withdraw or suspend the effectiveness of the exemption, ruling that "[e]ven though the Commission may not have the authority to modify intrastate certificates, it does have the authority to affect the transfer of intrastate rights." As a condition for accepting the transfer, the ICC ruled that the parties shall not consummate the transfer of the Certificate until after October 28, 1990, but pursuant to Central's temporary authority it may continue to lease the Certificate until consummation. Humboldt petitioned the ICC for reconsideration, and the ICC denied the petition on July 26 and removed the condition which delayed the closing until October 28.

Meanwhile, the Trustee filed the present adversary proceeding and motion for injunctive relief on May 10, alleging that Humboldt's actions before the TPSC are in violation of the automatic stay and that Debtor will suffer immediate and irreparable damage if the Certificate is revoked. Humboldt then moved for relief from stay on May 24, contending that the Court does not have jurisdiction over the Certificate so that its pursuit of the TPSC action does not violate the automatic stay, and that, if the stay is applicable, it is entitled to relief from the stay so that the TPSC can make a determination that the sale to Central is invalid according to the terms of the Certificate. The motions and complaint were heard by this Court on July 16.

## CONCLUSIONS OF LAW

The Court's analysis of this dispute must begin with a determination of its jurisdiction over the Authorities. Contrary to Humboldt's beliefs, this determination has nothing to do with whether ICC or TPSC regulations, rather than federal bankruptcy law, are involved. Bankruptcy courts often must adjudicate issues which invoke non-bankruptcy law principles when these principles have a direct bearing on the reso-

lution of the case before it. Instead, the Court must look to the statutory basis for its jurisdiction found in 28 U.S.C. §§ 157 and 1334. Pursuant to § 1334(d), "[t]he district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction of all the property, wherever located, of the debtor as of the commencement of such case, and of the property of the estate," 28 U.S.C. § 1334(d) (1990). District courts may refer any or all cases under title 11 to the bankruptcy judges for the district, 28 U.S.C. § 157(a) (1990), and have done so by way of blanket orders of reference, *In re English*, 59 B.R. 460, 463 (Bankr.N.D.Ga.1985), so that jurisdiction over estate property is vested in the bankruptcy courts. Moreover, according to 28 U.S.C. § 157(b),

> [b]ankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title.

28 U.S.C. § 157(b)(1) (1990). The list of core proceedings found in 28 U.S.C. § 157(b)(2) includes "motions to terminate, annul, or modify the automatic stay," 28 U.S.C. § 157(b)(2)(G) (1990), such as the one filed by Humboldt.

Accordingly, the next step is to determine whether the Authorities are considered to be "property of the estate" over which this Court has jurisdiction, and whether Humboldt's petition to revoke Debtor's operating authority was an "act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate" which is stayed by the filing of a bankruptcy petition, 11 U.S.C. § 362(a)(3) (1990).[1] Humboldt argues that the Authorities are not property of the estate, which includes "all legal or equitable interests of

the debtor in property as of the commencement of the case," 11 U.S.C. § 541(a)(1) (1990). In support of this contention it points to *In re Braniff Airways, Inc.*, 700 F.2d 935 (5th Cir.1982), *reh'g denied*, 705 F.2d 450 (5th Cir.1983), wherein the Court of Appeals ruled that the bankruptcy court did not have the authority to order the Federal Aviation Administration to reallocate airline landing "slots" to the debtor because the slots were not property of the estate but were simply rules promulgated by the FAA to restrict the use of airplanes, *Id.* at 942. By analogy, Humboldt argues that the Certificate is not estate property but is a regulation on shipping traffic imposed by the TPSC.

The Court does not agree. The *Braniff* ruling has been criticized for failing to give an appropriately expansive reading of § 541 called for by the United States Supreme Court in *U.S. v. Whiting Pools, Inc.*, 462 U.S. 198, 204, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983); *see In re Fugazy Express, Inc.*, 114 B.R. 865, 870 (Bankr.S.D.N.Y.1990); *In re Beker Indus. Corp.*, 57 B.R. 611, 622 (Bankr.S.D.N.Y.1986). In the more recent case of *In re Gull Air, Inc.*, 890 F.2d 1255 (1st Cir.1989), the First Circuit Court of Appeals explicitly rejected the conclusion in *Braniff* and ruled that the debtor had a proprietary interest in airline landing slots allocated to it by the FAA, *Id.* at 1260. The same logic has been applied to liquor licenses, *In re Hoffman*, 65 B.R. 985, 986 (D.R.I.1986); building permits, *In re Island Club Marina, Ltd.*, 38 B.R. 847, 852 (Bankr.N.D.Ill.1984); FCC licenses, *Fugazy Express*, 114 B.R. at 869–71; and trucking certificates such as those at issue in this case, *In re Rocky Mountain Trucking Co.*, 47 B.R. 1020, 1021 (D.Colo.1985); *see also Beker Indus.*, 57 B.R. at 622 (regional impact order permitting debtor to use roads to transport phosphate was property of the estate).

---

1. In making these determinations, the Court will not rely on its April 13 order entered in the Trustee's adversary proceeding against the TPSC stating that "the Debtor and its estate have a property interest in the Certificates and Permits, and that property interest is property of the

estate of the Debtor in its bankruptcy case." The order was a consent order prepared by one of the parties and signed by the Court; it did not reflect an independent legal conclusion reached by the Court.

■ The facts in *Rocky Mountain Trucking* are remarkably similar to those in the present case: the trustee in that case had arranged the sale of certificates for $60,000 pending approval by the Public Utilities Commission, and the District Court ruled that the Commission's determination that the certificates were dormant, which would prevent the transfer, would be an act to obtain property of the estate and is therefore stayed, 47 B.R. at 1021. This Court agrees with that conclusion on a theoretical and a pragmatic level. Not only does this outcome properly reflect the expansive definition of "property" in § 541(a), but it is also quite logical to conclude that the Authorities, which include the Certificate, are estate property when their sale will bring $355,000 to Debtor's estate. *See also Gull Air*, 890 F.2d at 1260. The Authorities must be considered property of the estate within this Court's jurisdiction, and the TPSC proceeding is an act to obtain property of the estate which is stayed by § 362(a). As a result, this matter is a core proceeding over which the Court has jurisdiction.

Having determined that this Court has the authority to hear the present motions, the next step is to address whether Humboldt has standing to bring its motion. Section 362(d) states that the court can grant relief from the stay "[o]n request of a party in interest," 11 U.S.C. § 362(d) (1990), and the Trustee argues that Humboldt is not a debtor or creditor in this case and therefore is not an interested party under the statute. Long-standing support for this view is found in *In re Comcoach Corp.*, 698 F.2d 571 (2d Cir.1983). According to the Second Circuit Court of Appeals,

When interpreting the meaning of Code terms such as "party in interest", we are governed by the Code's purposes ... One of those purposes is to convert the bankrupt's estate into cash and distribute it among creditors ... Bankruptcy courts were established to provide a forum where creditors and debtors could settle their disputes and thereby effectuate the objectives of the statute. Necessarily, therefore, the Bank must be ei-

ther a creditor or a debtor to invoke the court's jurisdiction.

*Id.* at 573 (cites omitted). That court noted that a creditor is an entity which has a claim, defined as a right to payment or right to equitable remedy for breach of performance giving rise to a right to payment, against the debtor or the estate, *Id.* at 574. It concluded that the Bank, which had foreclosed on a mortgage held by the debtor's lessor, was not a direct creditor of the debtor and was not entitled to move to lift the automatic stay, *Id.* at 574.

■ In this case Humboldt appears to be a former competitor of Debtor and current competitor of Central. It has no claim against Debtor or the estate, and under the *Comcoach* rule it would not have standing to ask for relief from the stay. However, this Court must take notice of the fact that in *Comcoach* the Bank had recourse in state court to enforce its rights because that action left the debtor's rights unaffected, 698 F.2d at 574. In many instances the mechanical application of the *Comcoach* rule would leave a party without such recourse, creating "an anomalous situation where a party is subject to the automatic stay but is unable to seek relief even if damage may result from its continuance," 2 *Collier on Bankruptcy* ¶ 362.07 (15th ed. 1990); *see also In re Johns–Manville Corp.*, 31 B.R. 965, 971 (S.D.N.Y.1983). That would be the result in the present case because, unlike in *Comcoach*, Humboldt cannot challenge the validity of the Certificate or its transfer in another forum without affecting Debtor's rights in the bankruptcy proceeding. Accordingly, the Court believes that Humboldt is entitled to an evaluation of the merits of its motion and will therefore grant standing for that purpose.

Relief from the automatic stay is governed by § 362(d), which provides that the Court shall grant relief

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or

(2) with respect to a stay of an act against property under subsection (a) of this section, if—

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization.

11 U.S.C. § 362(d) (1990). Subsection (d)(2) is applicable only to Chapter 11 proceedings and can offer no relief to Humboldt. Humboldt argues that there is "cause" for relief from stay under § 362(d)(1) to allow it to pursue the TPSC action because TPSC approval is necessary for the Trustee to consummate the transfer of the Certificate to Central.

■ Humboldt's argument is based on a faulty premise. According to the sales contract and this Court's April 13 order, the approval of the TPSC *or* the ICC is a prerequisite for the consummation of the sale. The Trustee and Central received the requisite approval from the ICC, satisfying the terms of the contract and the order. In fact, the ICC has exclusive jurisdiction over the transfer of intrastate authorities, preempting the TPSC's authority in this area, *Leaseway Transp. Corp. v. Bushnell*, 888 F.2d 1212, 1214–15 (7th Cir.1989). The fact that the ICC's exercise of jurisdiction would involve an interpretation of certificate provisions created by the TPSC does not change this result, because the provision at issue deals specifically with a transfer restriction which is within the ICC's realm of expertise. The Court will defer to the ICC's conclusion that, in granting temporary authority to Central to lease the Certificate, "we are properly exercising our statutory authority while in no way affecting the terms of the certificate." Moreover, on a pragmatic level, if the TPSC can retain jurisdiction over this matter simply because it arose in a TPSC-created provision, the TPSC will always be able to circumvent Congress' intent to leave certificate transfer decisions in the hands of the ICC by placing transfer restrictions in all of its provisions. Because the ICC has exclusive jurisdiction to determine the validity of the sale of the Certificate to Central and has approved the decision in satisfaction of the sales contract and this Court's order, any action before the TPSC is unnecessary and has been preempted.

Accordingly, Humboldt has not shown cause for relief from stay.

■ In addition to affirming the applicability of the automatic stay, the Court shall also consider the necessity for injunctive relief as requested by the Trustee. Factors to be considered in granting or denying a request for preliminary injunction are

(1) the likelihood of plaintiff's success on the merits; (2) whether the injunction will save the plaintiff from irreparable injury; (3) whether the injunction would harm others; and (4) whether the public interest would be served by the injunction.

*In re DeLorean Motor Co.*, 755 F.2d 1223, 1228 (6th Cir.1985). The merits of the parties' claims have already been discussed, and it has been determined that the ICC has approved the transfer of the Authorities to Central, that the ICC has exclusive jurisdiction over the transfer and that the TPSC has no authority to enter a contrary ruling. The "likelihood of success on the merits" therefore weighs in favor of the Trustee's request for an injunction. The Trustee also has asserted, and Humboldt has not denied, that Debtor will suffer immediate and irreversible injury if the TPSC revokes the Certificate because Trustee will not be able to consummate the sale of the Authorities to Central which would bring $355,000 into the estate. Humboldt has not offered any countervailing allegations of substantive injury resulting from the imposition of an injunction preventing it from pursuing the TPSC action. Finally, public policy supports the orderly distribution of assets in a Chapter 7 proceeding, which would be disrupted if the TPSC is allowed to revoke the Certificate and thereby prevent the consummation of the sale to Central. The Court therefore concludes that the above factors justify the reimposition of the automatic stay against Humboldt to prevent it from pursuing the TPSC action.

Accordingly, it is ORDERED that Humboldt's Motion for Relief from Stay is DENIED; and it is

FURTHER ORDERED that the Trustee's Complaint and Motion for Injunctive Relief are GRANTED; and that the Trustee's request for attorneys' fees is DENIED.

IT IS SO ORDERED.