911 F.2d 1168
 66 A.F.T.R.2d 90-5453, 59 USLW 2139, 90-2
USTC P 50,460,
23 Collier Bankr.Cas.2d 694, 20 Bankr.Ct.Dec. 1411,
Bankr. L. Rep. P 73,605
 In re TERWILLIGER'S CATERING PLUS, INC., Debtor.
E. Hanlin BAVELY, Plaintiff,
State of Ohio, Department of Taxation, Defendant-Appellant,
v.
UNITED STATES of America, INTERNAL REVENUE SERVICE,
Defendant-Appellee.
 No. 89-3561.
 United States Court of Appeals,
Sixth Circuit.
 Argued March 15, 1990.
Decided Aug. 13, 1990.
 
 Robert A. Goering, Cincinnati, Ohio, for Terwilliger's Catering Plus, Inc.
 E. Hanlin Bavely, Cincinnati, Ohio, pro se.
 Gregory S. Severance (argued), Chester T. Lyman, Jr. (argued), Office of the Atty. Gen. of Ohio, Columbus, Ohio, for State of Ohio, Dept. of Taxation.
 Gary R. Allen, Acting Chief, Gary D. Gray, Kenneth W. Rosenberg (argued), U.S. Dept. of Justice, Appellate Section Tax Div., Washington, D.C., Ronald T. Jordan, Office of the Dist. Counsel, Cincinnati, Ohio, for U.S.I.R.S.
 Before KENNEDY and NORRIS, Circuit Judges, and COHN, District Judge.*
 KENNEDY, Circuit Judge.
 
 
 1
 The United States and the State of Ohio each claim priority in this bankruptcy case to proceeds from the sale of the debtor's liquor license. The United States' claim is based on a valid, perfected federal tax lien filed against all of the debtor's property prior to the bankruptcy proceedings. The state's claim is based on an Ohio statute that prohibits the Liquor Control Commission from approving the sale of a license until the licensee pays all taxes owed to the state. The Bankruptcy and District Courts held that under the priority rules of the Bankruptcy and Tax Codes, the United States was entitled to the proceeds. The State of Ohio appeals, claiming that a liquor license is not property to which a tax lien can attach or which can become part of a debtor's estate. In the alternative, the state argues that even if the license is property, the trustee must still conform to the state's requirement that state taxes be paid before the license is transferred. For the reasons stated below, we AFFIRM.
 
 I.
 
 2
 This case arises out of the Chapter 7 bankruptcy case of Terwilliger's Catering Plus, Inc. Terwilliger's filed a petition for relief in July 1987. At the time of its filing, Terwilliger's held a class D-1, D-2, D-3, and D-6 liquor license issued by the Ohio Department of Liquor Control. The United States filed a proof of claim stating that the debtor was indebted to it in the amount of $36,734.98 as of the petition date for unpaid employee income tax withholdings, FICA taxes, FUTA taxes, and interest and penalties that were assessed on various dates between December 1985 and September 1986. As a result of the unpaid taxes, a federal tax lien had attached to all of the debtor's property pursuant to I.R.C. Sec. 6321. Notices of the liens were filed on April 14, 1986 and December 9, 1986. The state does not challenge the validity of the IRS liens or the filings that secured them. The State of Ohio also filed a proof of claim with the Bankruptcy Court based on unpaid pre-petition sales tax liabilities of $13,866.43 incurred between 1984 and 1986. The amount and validity of the state tax claims is also undisputed.
 
 
 3
 The trustee sought permission of the Bankruptcy Court to sell the liquor license free of all state claims. Pursuant to an agreement between the trustee, the United States, and the State of Ohio, the license was sold and the parties' respective rights attached to the proceeds. The license was subsequently sold for $8,921.00.
 
 
 4
 On June 2, 1988, the Bankruptcy Court issued an opinion, In re Terwilliger's Catering Plus, Inc., 86 B.R. 937 (1988), holding that the license was property to which the federal tax lien attached and which became part of debtor's estate. The court rejected the state's argument that the estate took the license subject to the state restriction, reasoning that such a requirement would undermine the federal bankruptcy scheme. On appeal, the District Court affirmed, again rejecting the state's claims.
 
 II.
 
 5
 The State of Ohio first argues that the liquor license is not property to which a tax lien could attach or which could become part of a bankruptcy estate. The state relies on several state court decisions which stand for the proposition that a liquor license is a privilege granted by the State of Ohio and does not give rise to property or contract rights. See Salem v. Liquor Control Comm'n, 34 Ohio St.2d 244, 298 N.E.2d 138 (1973); Abraham v. Fioramonte, 158 Ohio St. 213, 226, 107 N.E.2d 321 (1952); State ex rel. Zugravu v. O'Brien, 130 Ohio St. 23, 28-29, 196 N.E. 664 (1935). The state also points out that a license may be suspended or revoked for many reasons, including the failure to pay an excise tax and assigning, transferring, or pledging the liquor license in a manner contrary to commission rules. Ohio Rev.Code Ann. Sec. 4301.27 (Anderson 1989).[1] State law also provides that the Liquor Control Commission is required to cancel permits in the event of the holder's death, bankruptcy, or assignment of the license for the benefit of creditors, except as provided under the Commission's transfer rules. Ohio Rev.Code Ann. Sec. 4303.26(B)(1) (Anderson 1989); see also Ohio Admin.Code Sec. 4303:1-1-14(A) (1989), infra note 4.
 
 
 6
 If the license is not property within the meaning of the tax lien statute, I.R.C. Sec. 6321,[2] then the federal government's tax lien is invalid. If the license is not property within the meaning of the Bankruptcy Code, 11 U.S.C. Sec. 541,[3] then it does not become part of the bankruptcy estate and therefore cannot be sold by the trustee. The IRS argues that the tax lien issue has already been decided by this Circuit's decision in Paramount Finance Co. v. United States, 379 F.2d 543 (6th Cir.1967). Paramount Finance involved a dispute between the IRS and the holder of a prior security interest over the proceeds from the sale of an Ohio liquor license seized and sold by the IRS. The Court held that the IRS "was authorized to collect the tax due it from the taxpayer by levy on and seizure of the state liquor license." Id. at 544. Nonetheless, the Court directed that the proceeds be used to satisfy the lender's security interest since that interest was perfected long before the IRS tax lien.
 
 
 7
 The state argues that Paramount Finance incorrectly interpreted Ohio law on the legal nature of the debtor's interest in a liquor license. The state also asserts that the Court's holding that a tax lien attaches to a liquor license is dictum since the Court ultimately concluded that the tax lien did not have priority. We disagree with both of these assertions. Paramount Finance, as a necessary element of the case, decided that a liquor license was property within the meaning of the tax lien statute. Although state law may have changed in the intervening period, we do not believe that the changes, if any, change the outcome of our prior decision. Nevertheless, since Paramount Finance did not explain its reasoning, we address the question at greater length here.
 
 
 8
 The term "property" is not defined by the tax lien statute and numerous cases have held that federal law does not create any rights to property. Instead, courts look to state law to determine what legal interests in property a debtor or taxpayer has and to federal law to determine whether these state-created interests constitute property or rights to which a tax lien can attach. Butner v. United States, 440 U.S. 48, 54, 99 S.Ct. 914, 917, 59 L.Ed.2d 136 (1979); Aquilino v. United States, 363 U.S. 509, 513, 80 S.Ct. 1277, 1280, 4 L.Ed.2d 1365 (1960); see also United States v. Bess, 357 U.S. 51, 56-57, 78 S.Ct. 1054, 1057-58, 2 L.Ed.2d 1135 (1958) (holding that cash surrender value of a life insurance policy is subject to a tax lien even though it is not subject to a creditor's lien under state law since the taxpayer would have had access to these funds during his lifetime); 21 West Lancaster Corp. v. Main Line Restaurant, Inc., 790 F.2d 354 (3d Cir.1986) (mere fact that state law declares that a liquor license is not property and is not subject to a security interest does not prevent a federal tax lien from attaching where liquor license has value to the holder and can be sold); Rodriguez v. Escambron Dev. Corp., 740 F.2d 92, 97 (1st Cir.1984) (once state-created rights are determined "federal law governs whether these rights are 'rights to property' to which a tax lien may attach"); Young, Priority of the Federal Tax Lien, 34 U.Chi.L.Rev. 723, 726-28 (1967); Note, Property Subject to the Federal Tax Lien, 77 Harv.L.Rev. 1485, 1487 (1964) ("[s]tate labels should not control where the realities--the beneficial incidents of ownership--belie them").
 
 
 9
 21 West Lancaster is particularly instructive. The IRS and the holder of a prior perfected security interest disputed the ownership of the proceeds from the sale of a liquor license. As in the case before us, the panel acknowledged that a liquor license was not considered "property" and was not subject to a security interest under state law. The Third Circuit nevertheless held that a liquor license constituted "property" or "rights to property" within the meaning of federal law since the state had created rights in the license--it had beneficial value for its holder and could be transferred or sold--sufficient for it to be considered property. 790 F.2d at 356-58.
 
 
 10
 Like Pennsylvania, Ohio allows a liquor license to be transferred sold, inherited, and renewed. See generally, Ohio Rev.Code Ann. Secs. 4303.26, 4303.271, and 4303.273 (Anderson 1988) and Ohio Admin.Code Sec. 4301:1-1-14. It is undeniable that a liquor license has pecuniary value to its holder since the license enables the holder to sell alcoholic beverages and can be sold for value. Since the state has vested the owner of a liquor license with these beneficial interests, a liquor license constitutes "property" or "rights to property" within the meaning of federal tax lien law.[4] Although it is true that the state has the right to decide what property interests it wishes to create, it cannot thwart the operation of the Tax Code by classifying the interests it has created as something other than property rights.
 
 
 11
 Similarly, we believe the license constitutes property within the meaning of the Bankruptcy Code. While several Ohio courts have refused to label the rights granted to the licensee as "property rights," the state nonetheless has chosen to grant the licensee rights tantamount to property rights in all but name.[5] While the nature and extent of the debtor's interest are determined by state law "once that determination is made, federal bankruptcy law dictates to what extent that interest is property of the estate." In re N.S. Garrott & Sons, 772 F.2d 462, 466 (8th Cir.1985). Cf. In re Tittabawassee Inv. Co., 831 F.2d 104 (6th Cir.1987) (Michigan liquor license with similar restrictions on transferability constitutes property under Michigan law and within the meaning of the Bankruptcy Code).[6]
 
 
 12
 In a related argument, the state asserts that since a liquor license is not property which can be mortgaged or subjected to the claims of creditors under state law, Abraham, 158 Ohio St. at 226-27, 107 N.E.2d 321, then a liquor license is also not subject to seizure and sale to satisfy a federal tax debt. However, once we have concluded that the license constitutes property subject to seizure, this argument is foreclosed. Section 6334(c) of the Internal Revenue Code provides that "no property or rights to property shall be exempt from levy other than the property specifically made exempt by subsection (a)." The Supreme Court has consistently held that the inability of state law creditors to seize a taxpayer's assets in satisfaction of a debt does not prevent the execution of a federal levy. United States v. Mitchell, 403 U.S. 190, 204-05, 91 S.Ct. 1763, 1771-72, 29 L.Ed.2d 406 (1971); see also United States v. Rodgers, 461 U.S. 677, 103 S.Ct. 2132, 76 L.Ed.2d 236 (1983) (Texas taxpayer's home was subject to foreclosure and sale to satisfy a federal tax lien in spite of a Texas homestead exemption law that prevented the sale of a family home when a debtor's spouse owned an undivided interest in it); Bess, 357 U.S. at 57, 78 S.Ct. at 1058 ("state law is inoperative to prevent the attachment of liens created by federal statutes in favor of the United States"). In interpreting the language of section 6334(c), the Court has explicitly stated that "an exempt status under state law does not bind the federal collector. Federal law governs what is exempt from federal levy." Mitchell, 403 U.S. at 204, 91 S.Ct. at 1771. The Court went on to explain that the language of section 6334(c) "is specific and it is clear and there is no room in it for automatic exemption of property that happens to be exempt from state levy under state law." Id. at 205, 91 S.Ct. at 1771.
 
 III.
 
 13
 The State of Ohio argues in the alternative that even if the license was property subject to the IRS tax lien and became part of the bankrupt estate, the IRS claim could attach only to the portion of the liquor license's value that remained after the state's tax claim was satisfied.[7] In this regard, the state argues that we should adopt the analysis of the Ninth Circuit in In re Farmers Markets, Inc., 792 F.2d 1400 (9th Cir.1986). In Farmers Markets and other like cases, the Ninth Circuit interpreted the effect of the Bankruptcy Code on a California statute providing that the state may refuse to transfer ownership of a liquor license when the owner is delinquent in the payment of state taxes. The Ninth Circuit agreed that the license was property that became part of the estate, but noted that in granting the license, the state reserved the right to collect delinquent taxes before subsequent transfers. The reservation of this right, the court held, acted as a limitation on the debtor's property interest in the license. Since the debtor's property interest was thus impaired "the estate takes the license subject to the restrictions imposed on the debtor by its transferor." Id. at 1403. See also, In re Anchorage Int'l Inn, Inc., 718 F.2d 1446 (9th Cir.1983); Matter of Professional Bar Co., 537 F.2d 339 (9th Cir.1976); Meyer v. Bass, 281 F.2d 728 (9th Cir.1960). The same principle was applied by the Ninth Circuit to allow the state to enforce its revenue collection provisions when a liquor license was subjected to a tax lien sale. United States v. State of California, 281 F.2d 726 (9th Cir.1960).
 
 
 14
 The Ohio statute, Ohio Rev.Code Ann. Sec. 4303.26(B)(1), is similar. It too seeks to prevent license transfers when state taxes remain unpaid. It provides in relevant part:
 
 
 15
 The department of liquor control shall not transfer ownership [of a liquor license] until returns known to be delinquent are filed and until any such tax delinquency is resolved. As used in this division, "resolved" means that the tax delinquency has been paid or an amount sufficient to satisfy the delinquency is in escrow for the benefit of the state.
 
 
 16
 If Ohio may enforce this statute, then the state may be entitled to receive the funds from the sale of the license to satisfy the debtor's state tax obligations. If we find this statute preempted by federal law, then the federal government receives the sale proceeds to satisfy its tax lien.
 
 
 17
 Relying on the Ninth Circuit cases, the State of Ohio asserts that states which have adopted such a statute have reserved a property interest in the license. However, the reservation of some type of property interest does not answer the question to be resolved in this case. The question is not whether the state has reserved an interest in the license or placed a limitation on the debtor's interest in the license. Rather, the question to be answered is whether the state's debt collection method is a property interest that can be asserted in a bankruptcy proceeding to collect debts owed to the state ahead of payment of a perfected federal tax lien. In a sense, all debt collection methods that purport to attach to a particular interest in property serve to limit a debtor's interest in the property. Nevertheless, many such interests are not effective to secure a debt in bankruptcy or do not gain priority over an after-filed federal tax lien.
 
 
 18
 The State of Ohio asserts that its property interest, even though it is essentially a debt collection method, should be enforced both in a bankruptcy proceeding and against a federal tax lien because it is inherent in the license itself. The state, and the Ninth Circuit cases on which the state relies, cite two Supreme Court cases to support this assertion. In the first of these cases, Hyde v. Woods, 94 U.S. 523, 24 L.Ed. 264 (1877), the Court held that the San Francisco Stock and Exchange Board could enforce a membership rule allowing the exchange to sell a member's seat for the benefit of other creditors who were members of the exchange even though the sale of the seat occurred less than four months before the debtor filed for bankruptcy.[8] The assignee in bankruptcy, the forerunner to the present day trustee, argued that the case should be treated as though the debtor had attempted to create a perpetual lien on his property in favor of a class of creditors. The Court rejected this argument, however, noting that it was not the debtor who incumbered the property. Rather, the property was "incumbered with conditions when purchased, without which it could not be obtained." Id. at 525, 24 L.Ed. 264. Accordingly, the Court held that the sale and distribution of the funds did not violate the provisions of the Bankruptcy Code that prevented the preference of certain creditors.
 
 
 19
 Hyde, if it stood alone, could be distinguished from the case before us. In Hyde, the creditors reserved the right to proceed against the property as well as prohibit its transfer prior to the payment of debts to the other members. In essence, the Court recognized that the creditors could enforce what amounted to a lien on the property. In this case, the state has not reserved the right to proceed against the property, but must wait until the license holder wishes to sell the property or until a trustee in bankruptcy or the federal government pursuant to a tax lien attempts to seize and sell the license. The creditors in Board of Trade of City of Chicago v. Johnson, 264 U.S. 1, 44 S.Ct. 232, 68 L.Ed. 533 (1924), possessed a similarly limited right. In Johnson, the Supreme Court held that the Board of Trade could enforce a membership rule that prohibited a member from selling his seat on the exchange if the member had creditors on the exchange who objected to the sale because of outstanding debts owed them. The rules did not give the creditors or the Board of Trade the right to sell the seat to satisfy the debts, only the right to prevent a sale by the member before satisfaction of the debts related to the Board of Trade. The case involved three disputes. First, the Board of Trade claimed that the seat was not property of the estate within the meaning of the Bankruptcy Code. The Court rejected this argument. Id. at 10, 44 S.Ct. at 234. Second, the Board of Trade argued that the case could not be resolved in summary proceeding in the bankruptcy court because the license was not in the possession of the trustee. The Court rejected this claim also. Id. at 12-13, 44 S.Ct. at 234-35. Finally, the Court addressed the merits of the creditors' claim that they could use the restraint on alienation to prevent the trustee from selling the seat prior to paying the debts owed to the other members. The Court rejected the interpretation of the lower courts that the creditor members had not made a timely objection within the meaning of the membership agreement. Id. at 14-15, 44 S.Ct. at 235-36. The Court, citing Hyde v. Woods, did not believe that this invalidated the claims on the seat since the preference itself was created by a pre-petition membership agreement. The Court, which had earlier noted that the interest should be treated similarly to a common law lien, id. at 12, 44 S.Ct. at 234-35, stated:
 
 
 20
 Nor is there any weight to the argument that, as the preference claims of petitioners were not asserted until after bankruptcy proceedings were begun, the transfer to the trustee was rendered free from their objection. Such a claim was negatived in Hyde v. Woods, supra. The preference of the member creditors is not created after bankruptcy. The lien, if it can be called such, is inherent in the property in its creation, and it can be asserted at any time before actual transfer. Indeed, the danger of bankruptcy of the member is perhaps the chief reason, and a legitimate one, for creating the lien.
 
 
 21
 Id. at 15, 44 S.Ct. at 236. Accordingly, the Court held that the creditor board members' claims must be satisfied before the trustee could realize any proceeds for the general creditors.
 
 
 22
 Contrary to the assertion of the State of Ohio, the Supreme Court in these cases did not treat this debt collection method as an absolute property right held by the creditors and an inviolable limitation on the debtor's property rights. Instead, the interest held by the creditors in the two cases was analogous to a common law lien. While the treatment as a lien was implicit in Hyde, the Court in Johnson specifically noted that it considered the interest created to be analogous to a lien. Johnson, 264 U.S. at 11, 15, 44 S.Ct. at 234, 235.
 
 
 23
 From the state's standpoint, treatment of the statutory collection method as a lien promotes its interest in collecting state taxes. In cases where the amount of state taxes owed by the licensee far exceeds the value of the license, the trustee might be unable or unwilling to pay the state taxes in order to sell the license. See, e.g., Sparhawk v. Yerkes, 142 U.S. 1, 13-14, 12 S.Ct. 104, 106, 35 L.Ed. 915 (1891) (assignees of bankrupt could have reasonably refused to take stock exchange seat as property of the estate where the sale value was less than the debts and membership fees tied to the estate). Since the state statute forbidding transfer contains no provision allowing the state to accept payment in an amount equal to the value of the license, the state and other creditors may well be unable to collect anything from the debtor's ownership of the license. If the state's debt collection method is treated as a lien, then the secured value of the state tax debts can be reduced to the value of the license. See 11 U.S.C. Sec. 506.
 
 
 24
 Under the Bankruptcy Acts of 1867 and 1898, respectively, the Hyde and Johnson Courts determined that the lien-like interests created by the restraint should be protected. If the state's interest is to receive any protection in the case before us, it must qualify as a lien or similar security interest that has priority over a federal tax lien in a bankruptcy proceeding. Accord Anchorage Int'l Inn, 718 F.2d at 1449, 1452 n. 8 (treating similar interest created under Alaska law as a lien-like interest under the Bankruptcy Code). We must apply current federal law to determine whether the state's lien-like interest in the license is enforceable and has priority in the case before us.
 
 
 25
 Both the state and federal liens secure debts in excess of the sale price of the license. Since the holder of the superior lien is entitled to the full proceeds of the license, we need not decide whether the state's interest in the license would be protected in a proceeding where the only competitor for the proceeds to the sale was the trustee. Assuming the state's lien interest is not avoidable under section 724 of the Bankruptcy Code, 11 U.S.C. Sec. 724, establishes the priority of distribution for property subject to a federal tax lien. It provides in relevant part:
 
 
 26
 (b) Property in which the [bankrupt] estate has an interest and that is subject to a lien that is not avoidable under this title and that secures an allowed claim for a tax, or proceeds of such property, shall be distributed--
 
 
 27
 (1) first, to any holder of an allowed claim secured by a lien on such property that is not avoidable under this title and that is senior to such tax lien;
 
 
 28
 (2) second, to any holder of a claim of a kind specified in sections 507(a)(1), 507(a)(2), 507(a)(3), 507(a)(4), 507(a)(5), or 507(a)(6) of this title to the extent of such allowable tax claim that is secured by such tax lien;
 
 
 29
 (3) third, to the holder of such tax lien, to the extent that such holder's allowable tax claim that is secured by such tax lien exceeds any amount distributed under paragraph (2) of this subsection;
 
 
 30
 (4) fourth, to any holder of an allowed claim secured by a lien on such property that is not avoidable under this title and that is junior to such tax lien;
 
 
 31
 ....
 
 
 32
 (c) If more than one holder of a claim is entitled to distribution under a particular paragraph of subsection (b) of this section, distribution to such holders under such paragraph shall be in the same order as distribution to such holders would have been other than under this section.
 
 
 33
 (d) A statutory lien the priority of which is determined in the same manner as the priority of a tax lien under section 6323 of the Internal Revenue Code of 1954 (26 U.S.C. Sec. 6323) shall be treated under subsection (b) of this section the same as if such lien were a tax lien.
 
 
 34
 In order for Ohio to prevail, it must be determined that the state lien interest is superior to the federal tax lien within the meaning of section 724. Since bankruptcy law does not dictate whether the state's claim is superior to the federal tax lien within the meaning of section 724(b)(1), we must look to non-bankruptcy law to determine the priority of the state's claim. Where one of the competing liens is a federal tax lien, the applicable non-bankruptcy law that determines the priority between the liens is federal law. See In re Darnell, 834 F.2d 1263, 1266-67 (6th Cir.1987); see also Aquilino, 363 U.S. at 513-14, 80 S.Ct. at 1280-81 ("once the tax lien has attached to the taxpayer's state-created interests, we enter the province of federal law, which we have consistently held determines the priority of competing liens asserted against the taxpayer's 'property' or 'rights to property' ").
 
 
 35
 When there is a competition between a federal tax lien and a state law lien, priority is determined by the general rule that "the first in time is the first in right." United States v. City of New Britain, Conn., 347 U.S. 81, 85, 74 S.Ct. 367, 370, 98 L.Ed. 520 (1954). Unless the competing lien falls into one of the limited categories of liens enumerated in I.R.C. Sec. 6323(a),[9] the federal tax lien need not be filed to gain priority over other interests; it is perfected at the time the lien is assessed. I.R.C. Sec. 6322. As to the state created lien interest, we have said that before it "can even begin the race to file it must be so far specific and perfected that it constitutes a choate lien." Walker v. Paramount Eng'g Co., 353 F.2d 445, 449 (6th Cir.1965); see also United States v. State of Vermont, 377 U.S. 351, 84 S.Ct. 1267, 12 L.Ed.2d 370 (1964); New Britain, 347 U.S. at 84-86, 74 S.Ct. at 369-70; United States v. Security Trust & Sav. Bank of San Diego, 340 U.S. 47, 71 S.Ct. 111, 95 L.Ed. 53 (1950).
 
 
 36
 A lien is usually held to be choate "when the identity of the lienor, the property subject to the lien, and the amount of the lien are established." New Britain, 347 U.S. at 84, 74 S.Ct. at 369. Even when these factors are met, however, the state lien holder must show that he had the right to enforce the lien at some time prior to the attachment of the federal lien. For example, in Security Trust and Savings Bank of San Diego, a state attachment lien which had priority over subsequent lien holders under state law was held to be inchoate with respect to a federal tax lien. The Court noted, "[t]he attachment lien gives the attachment creditor no right to proceed against the property unless he gets a judgment within three years or within such extension as the statute provides. Numerous contingencies might arise that would prevent the attachment lien from ever becoming perfected by a judgment awarded and recorded." 340 U.S. at 50, 71 S.Ct. at 113. The Court also believed the choateness rule should be similar to the rule of priorities established for cases where an insolvent debtor is subject to a tax lien. In those cases, the Court noted "it has never been held sufficient to defeat the federal priority merely to show a lien effective to protect the lienor against others than the Government, but contingent upon taking subsequent steps for enforcing it." Id. at 51, 71 S.Ct. at 113-14.[10] Similarly, In United States v. Scovil, 348 U.S. 218, 75 S.Ct. 244, 99 L.Ed. 271 (1955), the Court held as an alternative ground for its holding that a landlord's distraint lien for the payment of rent was not sufficiently choate to protect the landlord's lien from a federal tax lien filed three days later. On this point, the Court noted, "[m]oreover, the distress lien was not perfected in the federal sense at the time the Government's liens were filed. Such perfection is, of course, a matter of federal law." Id. at 220, 75 S.Ct. at 246. The Court reached this conclusion because "[t]he five day period specified by Sec. 41-160 of the South Carolina code had not elapsed. During this time the tenant-taxpayer could have reacquired any interest the landlord may have had in his property by posting bond as provided by the Code." Id.
 
 
 37
 Similarly, in the case before us the state's lien interest was not enforceable at the time the tax assessment was made.[11] The state's lien interest is only enforceable when the license holder applies to the Commission to renew the license. Further, like the lien at issue in Scovil, the state's lien interest is defeated if the taxpayer either pays the tax or posts a bond guaranteeing the payment of a contested tax liability. In this case, at the time the federal tax lien was filed, the state had no right to payment that it could enforce against the liquor license since there was no pending request to renew or transfer the license and no pending hearing to cancel or suspend the license. Accordingly, the lien interest was contingent and therefore inchoate at the time the federal liens were perfected. While our result in this case is not necessarily inconsistent with the decisions of the Ninth Circuit, other than United States v. State of California, to the extent they reach a contrary result, we decline to follow them.
 
 
 38
 The state asserts that our holding will undercut its ability to collect taxes from license holders. This is clearly not the case. The state may still enforce its statute where a federal tax lien has not been placed on the license.[12] Even if the state's debt collection method provides it with limited protection in a bankruptcy proceeding, the state's tax debt has a relatively high priority under section 507 of the Bankruptcy Code, 11 U.S.C. Sec. 507. Further, it is difficult for the state to maintain that it has received less than it would have received outside of bankruptcy. Absent the action of the trustee to sell the license, the state would have had no right to collect its tax obligation by selling the license and applying the proceeds in satisfaction of the state tax debt.[13] The state desires the Bankruptcy Code's aid in selling the license, but at the same time wishes to avoid the Code's system for distributing the proceeds from that sale. Should the state wish its tax claims to be paid ahead of the tax liens in the future there are several methods recognized by the Tax Code for doing so. See, e.g., I.R.C. Sec. 6323.
 
 IV.
 
 39
 Accordingly, the judgment of the District Court is AFFIRMED and the case REMANDED for further proceedings not inconsistent with this opinion.
 
 
 40
 ALAN E. NORRIS, Circuit Judge, dissenting.
 
 
 41
 With several of the conclusions drawn by the majority, I agree. First, I agree that we must look to Ohio law in order to determine what legal interests to property the debtor had. Second, I agree that regardless of whether Ohio law has termed it "property" for state law purposes, whatever legal interests state law says the debtor possessed can be considered "property" within the meaning of federal law.
 
 
 42
 The majority, after giving lip service to the first proposition, but without ever having answered just what property interest the debtor did have in the liquor license, announces that the question on appeal "is not whether the state has reserved an interest in the license or placed a limitation on the debtor's interest in the license." Ante, at 1173. Instead, the majority posits the rather interesting proposition that "the question to be answered is whether the state's debt collection method is a property interest that can be asserted in a bankruptcy proceeding to collect debts owed to the state." Ante, at 1173. (Emphasis added.)
 
 
 43
 The term "property" connotes the sum of all the rights and powers incident to the ownership of a thing, including its use, enjoyment, and disposal. This bundle of rights and powers can be divided among a number of persons, each of whom then possesses an interest that is less than absolute ownership.
 
 
 44
 Rather than characterizing what the state reserved as merely a collection device and then wondering whether that can ever amount to a property interest which the state may assert in bankruptcy, it seems to me we need first to concern ourselves with the nature of the property to which the federal tax lien is said to have attached. For if state law tells us that the nature of the debtor's property interest in the license was such that the estate received from the debtor an asset which the debtor could not have sold because the state had not conveyed to the debtor the absolute right to sell the license, then we are in no position to characterize the state's reserved interest as a mere collection device. Instead, the state's reserved interest is a property interest as a matter of law.
 
 
 45
 This case does not involve, as the majority seems to imply, a situation where the state is simply regulating the debtor's absolute ownership of property by limiting its right to dispose of it. Instead, reference to Ohio law establishes that the asset was wholly created by the state, and that in defining the nature and extent of the property interest to be enjoyed by the holder of a liquor license, the state retained an incident of its ownership when it withheld the absolute right to dispose of the license. Accordingly, an incident of ownership which a license holder does not receive is one ordinarily enjoyed by the absolute owner of property--the unfettered power to dispose of it. The debtor's property interest in the license, then, never was absolute; from the outset it was limited by the interest the state retained. As the debtor took the license without the reserved incident of ownership, so did the estate.
 
 
 46
 As pointed out by the majority, the Ninth Circuit Court of Appeals has dealt with a line of cases concerning a California statute, which for all practical purposes is identical to the Ohio statute. That court's logic is compelling. In those cases, it was held that the state's reservation of the right to insist upon the payment of delinquent taxes as a condition precedent to the holder of a liquor license being able to transfer the license, acted as a limitation on the debtor's property interest in the license, and the debtor's estate therefore took the license subject to the restrictions imposed upon the debtor. The logic underlying these holdings is the same as employed by the Supreme Court in Board of Trade of City of Chicago v. Johnson, 264 U.S. 1, 44 S.Ct. 232, 68 L.Ed. 533 (1924) and Hyde v. Woods, 94 U.S. 523, 24 L.Ed. 264 (1877), and points out the reasons we should not characterize Ohio's position as an effort to compete with other creditors over the proceeds of the sale of the license. In the hands of the estate the asset had no value unless it could be transferred; and it could not be transferred without accommodating the owner of the reserved interest against alienation. If the taxes owed by the debtor exceeded the value of a freely transferable license, then we can assume the estate, standing in the shoes of the debtor, would not deem it prudent to pay the taxes. If the license did have value in excess of the taxes owed, then that would be the value of the asset which the estate could pursue for the benefit of creditors.
 
 
 47
 As the Ninth Circuit Court of Appeals pointed out:
 
 
 48
 We look not to the competing claims against the debtor, but to the nature of the debtor's property rights in the license. In In re Professional Bar, [537 F.2d 339, 340 (9th Cir.1976) ] we stated:
 
 
 49
 The bankrupt estate, insofar as it includes liquor licenses, has only the limited value of the licenses encumbered as they may be by the terms of the statutes which create the licenses and provide the conditions of their transfer. It is to that limited value that any claims against the estate attach.
 
 
 50
 In re Farmers Markets, Inc., 792 F.2d 1400, 1403 (9th Cir.1986).
 
 
 51
 The opinion in Farmers Markets built upon earlier opinions in which the court's rationale was spelled out even more clearly. For example, in United States v. California, 281 F.2d 726 (9th Cir.1960), the court utilized language particularly appropriate to the resolution of this appeal.
 
 
 52
 Here the license existed because the state had issued it. If the licensee acquired something of value, it was because the state had bestowed it upon him. Whatever value the license, as property, may have had to a purchaser depended upon its transferability. If it was transferable, it was because the state had made it so. If the state had seen fit to impose conditions upon issuance or upon transfer of property it has wholly created, that is the state's prerogative so long as its demands are not arbitrary or discriminatory. The federal government has no power to command the state in this area. It has no power to direct that property be created by the state for purposes of federal seizure.
 
 
 53
 281 F.2d at 728 (emphasis added).
 
 
 54
 It seems to me that the majority is doing precisely what it may not do--creating property by conferring upon the estate the unfettered right to transfer the license, an incident of ownership not enjoyed by the debtor. Because the estate may take no greater an interest than that held by the debtor, the judgment of the district court should be reversed.
 
 
 
 *
 The Honorable Avern Cohn, United States District Court for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 The state has not attempted to cancel the license in this case
 
 
 [2]
 I.R.C. Sec. 6321 provides in relevant part that a federal tax lien is created in the amount of any unpaid tax on "all property and rights to property, whether real or personal, belonging to such person."
 
 
 [3]
 Section 541(a)(1) of the Bankruptcy Code, 11 U.S.C. Sec. 541(a)(1), provides that the filing of a petition in bankruptcy creates an estate that consists generally of "all legal or equitable interests of the debtor in property as of the commencement of the case."
 
 
 [4]
 Ohio's own regulations appear to contemplate that a liquor license can be sold by a trustee in bankruptcy or the IRS. Ohio Admin.Code Sec. 4301:1-1-14(A) provides in relevant part:
 Upon written application therefor on forms prescribed and furnished by the department and upon approval thereof by the director of liquor control, permits or interests therein may be transferred.
 ....
 (4) In the case of a bankrupt permit holder to his trustee in bankruptcy, and thereafter from such trustee to a person, firm or corporation, at the same location, when such transfer is in connection with the bona fide sale of the business or assets of such bankrupt permit holder, or pursuant to an order of this commission or a court of competent jurisdiction when the applicant or location meet all other necessary requirements under law.
 ....
 (7) In case of the business of a permit holder having been seized by the internal revenue service, to the purchaser of said business from the internal revenue service. In such event, the application for transfer may be signed by an internal revenue agent.
 ....
 (9) An application may be filed for the simultaneous transfer of ownership and location when such transfer is in connection with the bona fide sale of the business or assets of such permit holder, unless otherwise prohibited by law.
 
 
 [5]
 As already, noted, Ohio's own regulations appear to contemplate that a liquor license can be transferred to and sold by a trustee in bankruptcy. See supra note 4
 
 
 [6]
 The state has not explicitly argued that its statutes restricting the alienability of a liquor license operate to prevent the license from being transferred to the trustee prior to the payment of state tax liabilities, nor could it successfully do so. The bankruptcy code explicitly invalidates restrictions on the transferability of property that prevent property from becoming part of the bankruptcy estate. 11 U.S.C. Sec. 541(c)(1)
 
 
 [7]
 The state argues that we adopted this position in Paramount Finance when we stated that the dispute between the IRS and the lender was resolved "[a]fter allowances for expenses and claims." Paramount Finance, 379 F.2d at 544. According to the district court's opinion in Paramount Finance, the state sales taxes were paid as part of these expenses and claims. Paramount Finance Co. v. S & C Tavern, Inc., 245 F.Supp. 766, 767 (N.D.Ohio 1965). Any dispute between the State of Ohio and the IRS over the order of payment of state and federal taxes was clearly not before the Court of Appeals, however. Further, the district court opinion makes clear that the parties entered into a private written agreement to pay the state claims and then litigate the right to the remainder of the proceeds. Id. Thus the issue of the state's right to first payment was not before either court
 
 
 [8]
 The rule enforced in that case provided "[i]n sales of seats for account of delinquent members, the proceeds shall be applied to the benefit of the members of this Board exclusive of outside creditors, unless there shall be a balance after payment of the claims of members in full." Hyde, 94 U.S. at 524, 24 L.Ed. 264
 
 
 [9]
 According to section 6323(a), the federal lien is not effective against "any purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor until notice thereof which meets the requirements of subsection (f) has been filed by the Secretary." The lien interest created by the state does not qualify under this provision
 
 
 [10]
 The modern analog of the priority statute for insolvent debtors subject to a federal tax lien is inapplicable to cases that arise under chapter 11. 31 U.S.C. Sec. 3713(a)(2)
 
 
 [11]
 Further, at least some portion of the state's lien interest was not certain in amount at the time several of the federal assessments were made. The federal tax assessments were made on four different dates between December 30, 1985 and September 29, 1986. The date of the state tax lien assessments is not contained in the record before us. However, the state's proof of claim filed with the Bankruptcy Court states that six separate sales tax assessments were made for dates including the following months: December 1984; February and March 1985; and June 1985-August 1986
 
 
 [12]
 We do not decide whether the state can generally enforce this provision to gain priority in a bankruptcy proceeding under section 724(b)(4) or (d)
 
 
 [13]
 Further, if the license does not become part of the bankruptcy estate and cannot be sold by the trustee as part of the sale of the business, it is likely that the state would collect nothing at all. The state has forbidden the debtor from transferring the license independent of the sale of the business. Since the rest of the business would become part of the estate and could be sold by the trustee, then the license itself would be left to expire of its own accord. Even if the trustee could sell the license and the business in one transaction, subject to prior payment of the delinquent state taxes, the trustee could reasonably choose not to do so if the taxes owed to the state were far in excess of the value of the license. The right to prior payment of taxes asserted by the state is not limited to the value of the license