**In re David BURGESS, Debtor.**

**No. CV–N–98–375–ECR(RAM).**
**Bankruptcy No. 97–31890–GWZ.**
**App. No. 98–8.**

United States District Court,
D. Nevada.

May 28, 1999.

Geoffrey L. Giles, Reno, NV, for Debtor.

### ORDER

REED, District Judge.

Appellant David Burgess (the debtor) appeals from an order of the bankruptcy court dated June 17, 1998, denying his motion for an order to show cause. Appellant's notice of appeal (# 2) was filed in the bankruptcy court on June 25, 1998, and his opening brief (# 10) was filed in this Court on October 29, 1998. Real party in interest Storey County filed its opposition brief (# 12) on November 12, 1998. Appellant filed his reply brief (# 14) on November 19, 1998. We have jurisdiction pursuant to 28 U.S.C. § 158(a)(1), and for the reasons set forth below, we REVERSE.

### BACKGROUND

Since 1983, the debtor has operated a legal brothel (or "house of ill fame") in Storey County, Nevada. On July 30, 1997, the debtor filed a voluntary petition for bankruptcy under Chapter 11 of the Bankruptcy Code. On June 2, 1998, the Storey County Commission and the Sheriff of Storey County held a hearing to express their displeasure with the debtor's continuing association with the Hell's Angels motorcycle "club" (or, in the County's terminology, "outlaw motorcycle gang"). At the hearing, the Commissioners revoked the debtor's brothel license.

The debtor ceased operating his business as a brothel, and immediately sought relief in the bankruptcy court, this Court, and Nevada state court. Before the bankruptcy court, the debtor argued that the County's action was a violation of the automatic stay, and in the alternative, for an injunction pursuant to 11 U.S.C. § 105. Before this Court, in a hearing before the Honorable David W. Hagen, United States District Court Judge, the debtor argued that the County's action violated both his First Amendment and Due Process rights. The bankruptcy court denied relief, but on July 7, 1998, Judge Hagen granted a preliminary injunction in the debtor's civil rights case, enjoining the County from enforcing the revocation of the debtor's brothel license. *Burgess v. Storey County Bd. of Comm'rs*, No. CV–N–98–331–DWH(RAM) (D.Nev. filed July 7, 1998). Since then, the brothel has been back in operation, although the debtor's civil rights case before Judge Hagen is still pending.

■ Before us now is the debtor's appeal from the bankruptcy court's order, filed June 17, 1998. The County argues that the appeal should be dismissed as moot, in light of the injunction issued by Judge Hagen. The debtor contends that the appeal is not moot, since should we find that the County did violate the automatic stay, he would be entitled to damages for the period of time the brothel was closed—that is, from June 2 to July 7, 1998. Since it is true that damages may be available for violations of the automatic stay, pursuant to 11 U.S.C. § 362(h), we agree with the debtor that this appeal is not moot, at least with regard to this issue.

In denying relief to the debtor, the bankruptcy court held that the brothel license was not "property," but rather a "personal privilege." The County now argues that the question of whether the license is property is completely irrelevant to this appeal, and did not, in fact, brief the issue. On the contrary, however, the question is quite important, as we explain below.

### DISCUSSION

■ When a bankruptcy petition is filed, an "estate" is created, consisting of all of the debtor's interests, both legal and equitable, in all property, both tangible and intangible. 11 U.S.C. § 541(a); *Hillis Motors, Inc. v. Hawaii Auto. Dealers'*

*Ass'n,* 997 F.2d 581, 585 (9th Cir.1993). Although "property" is not defined in the Code, it has been interpreted liberally in order to further the policies underlying the bankruptcy laws. *See United States v. Whiting Pools, Inc.,* 462 U.S. 198, 202–04, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983). "[T]he congressional goal of encouraging reorganizations ... suggest[s] that Congress intended a broad range of property to be included in the estate." *Id.* at 204, 103 S.Ct. 2309.

■■■ Also when a bankruptcy petition is filed, an automatic stay arises. 11 U.S.C. § 362(a); *Hillis Motors,* 997 F.2d at 585. "The scope of the stay is quite broad.... It is designed to effect an immediate freeze of the status quo by precluding and nullifying post-petition actions, judicial or nonjudicial, in nonbankruptcy fora against the debtor or affecting the property of the estate." *Hillis Motors,* 997 F.2d at 585. The automatic stay provision specifically enjoins eight types of actions. *See* 11 U.S.C. § 362(a). Only two of those, however—§ 362(a)(1) and § 362(a)(3)—are relevant here. In pertinent part, § 362(a) provides as follows:

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title ... operates as a stay, applicable to all entities, of—

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case;

. . .

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate[.]

11 U.S.C. § 362(a). Clearly, the action of the County in revoking the debtor's brothel license falls into at least one of these subsections. The question is which one.

The County contends that, regardless of whether its action would otherwise have violated the automatic stay, it is saved by one of the exceptions to the automatic stay set forth in § 362(b), namely § 362(b)(4). Section 362(b) provides, in relevant part:

(b) The filing of a petition under section 301, 302, or 303 of this title ... does not operate as a stay—

. . .

(4) under subsection (a)(1) of this section, of the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power[.]

11 U.S.C. § 362(b). The County argues that this case turns entirely on whether its action falls within this "government exception" to the automatic stay. If that were true, the County would probably prevail. The County makes a strong case that its action should be characterized as being in furtherance of its police or regulatory powers.

■■ However, § 362(b)(4), by its own terms, applies only to § 362(a)(1), and not to § 362(a)(3) or any other subsection of § 362(a). This is in contrast to several other subsections of § 362(b), which expressly apply to all of § 362(a). *See* 11 U.S.C. § 362(b)(1)–(3), (6)–(16). There is authority for holding that, notwithstanding the plain text of § 362(b)(4), the government exception applies to both § 362(a)(1) and § 362(a)(3). *See, e.g., Yellow Cab Co-op. Ass'n v. Metro Taxi, Inc. (In re Yellow Cab Co-op. Ass'n),* 132 F.3d 591, 598 (10th Cir.1997); *Javens v. City of Hazel Park (In re Javens),* 107 F.3d 359, 370 (6th Cir.1997). Were we writing on a blank slate, we might be convinced to extend the exception as well. After all, a judicial or administrative proceeding initiated by the government in exercise of its police power will often constitute an "act ... to exercise

control over property of the estate." *In re Yellow Cab,* 132 F.3d at 598 (noting that "many governmental regulatory actions can be characterized as exercising control over a debtor's property"); *In re Javens,* 107 F.3d at 367 (stating that "[m]any actions against a debtor taken under governmental police or regulatory power have the effect of controlling the property of the estate"). The court in *In re Javens* criticized as a "false dichotomy" the idea "that no logical intersection exists between the category of an 'act ... to exercise control over property of the estate' and the category of an 'action or proceeding ... to enforce [a] governmental unit's police or regulatory power,' " *In re Javens,* 107 F.3d at 367 (citations omitted), noting that this dichotomy was implicit in the argument that there might be a government exception to an automatic stay arising under § 362(a)(1), but not to a stay arising under § 362(a)(3).

Of course, we are not writing on a blank slate. The Ninth Circuit has clearly held that the § 362(b)(4) exception does not apply to § 362(a)(3) violations of the automatic stay. *Hillis Motors,* 997 F.2d at 590–91. "There is no governmental powers exception to section 362(a)(3), the provision at issue here." *Id.* at 591. Thus if the County's action falls within § 362(a)(3), it will not make any difference why the County acted—i.e., to further its own pecuniary interest or in pursuit of a legitimate public policy goal.

To determine whether the County's action did fall within § 362(a)(3), we must decide: (1) whether the debtor's brothel license is property; and (2) whether the County's action was an "act ... to exercise control over" that property. As noted above, the County did not provide any insight into the "property" issue. Likewise, we have not been overwhelmed with citations to cases involving the issue of whether a license to operate a legal brothel is "property" or not. The County cites to cases from the Nevada Supreme Court and this Court which indicate that Nevada

law views prostitution as an activity that can be heavily regulated or forbidden altogether. *See IDK, Inc. v. Clark County,* 599 F.Supp. 1402, 1412 (D.Nev.1984), *aff'd,* 836 F.2d 1185 (9th Cir.1988); *Kuban v. McGimsey,* 96 Nev. 105, 111–12, 605 P.2d 623 (1980). From this, the bankruptcy court reasoned that the license was not property, but merely "a personal privilege granted to certain counties"—a "state matter .... subject to discretionary control of the county." Tr. of Hr'g held June 5, 1998, before the Honorable Bert M. Goldwater, United States Bankruptcy Judge, at 43–44.

 Unfortunately, this analysis is incorrect. The fact that Nevada law may not consider brothel licenses to be property is not dispositive. The fact that the right/privilege to operate a brothel is defined by state law does not matter—most property rights are defined by state law. That does not mean that those rights receive no protection from federal law, bankruptcy and otherwise. In fact, state-created "rights" expressly denominated by the state as "privileges" have often been treated as "property" for purposes of the bankruptcy laws. *E.g., In re Nejberger,* 934 F.2d 1300, 1302 (3d Cir.1991); *Bavely v. United States (In re Terwilliger's Catering Plus, Inc.),* 911 F.2d 1168, 1172 (6th Cir. 1990). While state law creates the right, federal law determines whether it is "property" for purposes of the federal bankruptcy laws, tax laws, etc. *In re Nejberger,* 934 F.2d at 1301–02 ("[W]hile state law creates legal interests and defines their incidents, the ultimate question whether an interest thus created and defined falls within a category stated by a Federal statute, requires an interpretation of that statute which is a Federal question." (internal quotations omitted)); *In re Terwilliger's Catering,* 911 F.2d at 1171–72 ("While the nature and extent of the debtor's interest are determined by state law 'once that determination is made, federal bankruptcy law dictates to what extent that interest is property of the estate.' " (quoting *In re*

*N.S. Garrott & Sons,* 772 F.2d 462, 466 (8th Cir.1985))).

While we have found no published bankruptcy decisions regarding brothel licenses, numerous cases have held that similar licenses issued by state agencies are property for bankruptcy purposes. Most of these cases involve liquor licenses, rather than brothel licenses, but the principal is the same. Most states or local governments require businesses that wish to sell alcoholic beverages to be licensed, and regardless of how the issuing state characterizes such licenses, most courts have held that they are property under the bankruptcy laws. *E.g., In re Nejberger,* 934 F.2d at 1302; *In re Terwilliger's Catering,* 911 F.2d at 1172; *Stern v. Massachusetts Alcohol Beverage Control Comm'n (In re J.F.D. Enters., Inc.),* 183 B.R. 342, 347 (Bankr.D.Mass.1995); *Gillson v. Middletown (In re Gillson),* 134 B.R. 702, 704 (Bankr.D.R.I.1991); *In re Addis,* 40 B.R. 908, 909 (Bankr.W.D.Wis.1984); *In re Mason,* 18 B.R. 817, 820 (Bankr.W.D.Tenn.1982); *see California v. Farmers Markets, Inc. (In re Farmers Markets, Inc.),* 792 F.2d 1400, 1402–03 (9th Cir.1986). Courts have also held that a license to operate a racetrack or a casino is property of the estate. *In re National Cattle Congress, Inc.,* 179 B.R. 588, 593 (Bankr.N.D.Iowa 1995) (racetrack), *remanded on other grounds,* 91 F.3d 1113 (8th Cir.1996); *Elsinore Shore Assocs. v. Casino Control Comm'n (In re Elsinore Shore Assocs.),* 66 B.R. 723, 734 (Bankr. D.N.J.1986) (casino license). In addition, many other cases have held similar licenses and certifications to be property. *E.g., Ramsay v. Dowden (In re Central Arkansas Broadcasting Co.),* 68 F.3d 213, 214–15 (8th Cir.1995) (FCC license); *Federal Aviation Admin. v. Gull Air, Inc. (In re Gull Air, Inc.),* 890 F.2d 1255, 1260 (1st Cir.1989) (airport landing slots); *Shimer v. Fugazy (In re Fugazy Express, Inc.),* 124 B.R. 426, 430 (S.D.N.Y.1991) (FCC license), *appeal dismissed,* 982 F.2d 769 (2d Cir.1992); *Nu–Process Brake Engineers, Inc. v. Benton (In re Nu–Process Brake Engineers, Inc.),* 119 B.R. 700, 701 (Bankr. E.D.Mo.1990) (right to pursue reinstatement of a sales tax license); *Brizendine v. Humboldt Express, Inc. (In re Brown Transport Truckload, Inc.),* 118 B.R. 889, 893 (Bankr.N.D.Ga.1990) (trucking certificate); *In re Draughon Training Institute, Inc.,* 119 B.R. 927, 930–31 (Bankr.W.D.La.1990) (state and federal certifications of eligibility to receive educational funding); *Beker Indus. Corp. v. Florida Land & Water Adjudicatory Comm'n (In re Beker Indus. Corp.),* 57 B.R. 611, 621–22 (Bankr. S.D.N.Y.1986) (permission to truck phosphate ore); *In re American Central Airlines, Inc.,* 52 B.R. 567, 571 (Bankr. N.D.Iowa 1985) (airport landing slots); *Coben v. LeBrun (In re Golden Plan of California, Inc.),* 37 B.R. 167, 170 (Bankr. E.D.Cal.1984) (corporate name).

Of course, some courts have gone the other way. In *In re Gammo,* for instance, the court held that a state-issued license to sell lottery tickets was not property. *In re Gammo, Inc.,* 180 B.R. 485, 487 (Bankr. E.D.Mich.1995); *see also Pension Benefit Guaranty Corp. v. Braniff Airways, Inc. (In re Braniff Airways, Inc.),* 700 F.2d 935, 942 (5th Cir.1983) (holding that airport landing slots are not property); *Geiger v. Pennsylvania (In re Geiger),* 143 B.R. 30, 35–36 (E.D.Pa.1992) (holding that a "driver's license is a privilege and not property"), *aff'd,* 993 F.2d 224 (3d Cir.1993). Clearly, though, the majority of cases examining the issue have held that liquor and similar licenses are property for bankruptcy purposes. The case that most concerns us, however, is *Wade v. State Bar of Arizona (In re Wade),* 115 B.R. 222 (9th Cir. BAP 1990), *aff'd,* 948 F.2d 1122 (9th Cir.1991). In *In re Wade,* the Bankruptcy Appellate Panel of the Ninth Circuit held that an attorney's license to practice law was not property. *In re Wade,* 115 B.R. at 228. While the B.A.P.'s decision was affirmed by the Ninth Circuit, that court did not address the property question at all. The only question before the Circuit was whether the state bar was a government

agency for purposes of the government exception. *In re Wade,* 948 F.2d. 1122, 1123–25 (9th Cir.1991). Thus the Ninth Circuit's decision is not particularly strong authority for the proposition that a license to practice law is not property. Nonetheless, we are convinced (although we suspect there may be some who would argue to the contrary) that a brothel license is more like a liquor license than a license to practice law.

■ Beyond the bankruptcy context, the Ninth Circuit has held that, for instance, a property right exists in license tags required for coin-operated "crane" games. *Wedges/Ledges of California, Inc. v. City of Phoenix,* 24 F.3d at 56, 63–64 (9th Cir.1994). Further, we note that the very license at issue here has recently been held by Judge Hagen, in the debtor's civil rights case, to constitute a property right for purposes of procedural due process analysis. *Burgess v. Storey County Bd. of Comm'rs,* No. CV–N–98–331–DWH(RAM) (D.Nev. filed Mar. 4, 1999) (of which order we hereby take judicial notice). Thus, we hold that the brothel license at issue here is "property," at least for the purposes of 11 U.S.C. § 362(a)(3). The license has enormous value to the estate—in fact, without the license to operate as a brothel, there would essentially be no business left to reorganize. To hold that the license is not property would be to contravene the broad definition of property meant to further "the congressional goal of encouraging reorganizations." *United States v. Whiting Pools, Inc.,* 462 U.S. 198, 204, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983).

■ Next, we must determine whether the County's action in revoking the license was an "act ... to exercise control over" the license. It has been suggested that "the control provision of § 362(a)(3) is to be defined by the underlying congressional purposes of § 362(a)(3) under the Bankruptcy Reform Act of 1978—that is, to prevent dismemberment of the estate and assure its orderly distribution.... An action dismembers an estate by eliminating or reducing the potential value of an asset of the estate." *In re J.F.D. Enters., Inc.,* 183 B.R. at 348. In the instant case, revoking the debtor's brothel license would essentially *destroy* the estate—without the license, the debtor cannot operate a brothel. Since his business *is* operating a brothel, there would thus be nothing left to reorganize. "Revocation constitutes maximum control over Debtor's [brothel] license as the act destroys any value which this property has to the estate." *In re National Cattle Congress, Inc.,* 179 B.R. at 597. *Accord In re Brown Transport Truckload, Inc.,* 118 B.R. at 893; *see In re Beker Indus. Corp.,* 57 B.R. at 629 (stating that "proceedings to revoke or declare forfeit the equivalent of licenses ... [are] more properly classified ... as actions against property of the estate rather than actions concerning regulation of use of property"); *In re American Cent. Airlines, Inc.,* 52 B.R. at 571 (holding that "the Defendants' reallocation of the Debtor's slots constituted an unlawful act to obtain possession of the property of the estate"). In short, then, we cannot see the County's action in revoking the debtor's brothel license as anything but an attempt "to exercise control over" that license.

Therefore, we conclude that the County's action in revoking the debtor's license falls within the scope of § 362(a)(3), for which there is no corresponding government exception. It may very well be that the County has the power under state law to revoke a brothel license at any time, but when the holder of such a license is in bankruptcy, the County must first seek relief from the automatic stay. As the County did not seek such relief in this case, its action thus violated the automatic stay.

Since the bankruptcy court held that the County's action did not violate the automatic stay, the court never addressed the issue of whether damages should be awarded, and if so, how much. Therefore we will remand to the bankruptcy court for further proceedings on these questions.

We note that the debtor also appeals the bankruptcy court's decision not to enjoin the County's action pursuant to 11 U.S.C. § 105. In light of the fact that an injunction has since been issued by this Court, however, this issue is clearly moot. The debtor has already received from this Court the relief he sought from the bankruptcy court pursuant to 11 U.S.C. § 105.

*IT IS, THEREFORE, HEREBY OR-DERED* that the order of the bankruptcy court filed June 17, 1998, is *REVERSED* and *REMANDED* for further proceedings consistent with this opinion.